CAMPBELL, Judge.
Appellant pleaded nolo contendere to possession of cocaine and possession of cannabis, reserving the right to appeal the denial of his motion to suppress. We conclude that the court erred in denying that motion.
The record reveals that Officer Mareo-trigiano first saw appellant and Timothy Knowlton, both Caucasian, at 2 a.m., driving a white open-air Jeep in a high crime/ drug area that is predominantly African-American. Appellant was driving the Jeep. The officer watched the Jeep circle the block twice before coming to a stop. When it stopped, a black male came running toward the Jeep and jumped into the back. At least two other black males then came running toward the car and stood at the passenger side, blocking the officer’s view of the interior of the Jeep. Ten to fifteen seconds later, the two black males walked away and the other black male jumped out of the back of the Jeep. The officer saw no money or packages exchanged. The Jeep then circled the block again and stopped at a stop sign for what the officer deemed to be a long time-— “maybe ten seconds.” The officer, in his cruiser, pulled up to the same intersection, facing the Jeep. When the Jeep turned, the officer pulled in behind it. As the officer followed the Jeep, he noticed the passenger, Knowlton, fidgeting toward his back pants pocket. When the officer activated his lights, Knowlton’s fidgeting became more intense. The officer shined his spotlight on Knowlton, and Knowlton’s fidgeting became even more pronounced. The officer then stopped the Jeep. Cocaine and cannabis were found on Knowlton and in the Jeep.
Based on these circumstances, we conclude that the officer did not have a reasonable suspicion that a crime was being committed. At the time the officer made the stop, it was late at night and he had seen two white males driving a Jeep in an African-American neighborhood known for drugs and crime. He saw a suspicious *1188 encounter at the Jeep and saw the Jeep stop for a long time at a stop sign. He also saw the passenger dig into his back pants pocket.
Although the trial court found that these facts created a reasonable suspicion that a crime had been committed, was being committed, or was about to be committed, we cannot agree. While these circumstances were certainly suspicious, they do not rise to the level required to instigate a stop. This was the typical “drive-by” drug transaction for which this court has required that the officer see an actual exchange of drugs or money.
Although the court may look to various other factors to justify the stop, if the officer has not seen an actual exchange, those additional factors are not sufficient. See Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995) [finding that the presence of two additional key factors justified the stop: the “deal” had taken place between Burnette and a known drug dealer; and the officer had seen an actual hand-to-hand exchange, although he had not seen the objects involved in the exchange]. In the instant case, although the area was known for drug sales and the officer had a great deal of prior narcotics experience, this was not enough. He saw what amounted to suspicious behavior, nothing more. He saw no exchange and had never seen any of the participants before. We conclude that these circumstances were not sufficient to support a stop. See Wilson v. State, 707 So.2d 893 (Fla. 2d DCA 1998).
Accordingly, we reverse the denial of the motion to suppress.
PATTERSON, C.J. and CASANUEVA, J., Concur.