#24564, #24565-a-JKM

**2008 SD 67**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

TIMOTHY JAMES BERGEE,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN W. BASTIAN
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

GARY CAMPBELL
Assistant Attorney General                          Attorneys for plaintiff
Pierre, South Dakota                                    and appellee.

BRAD A. SCHREIBER of
Schreiber Law Firm                                     Attorneys for defendant
Belle Fourche, South Dakota                      and appellant.

\* \* \* \*

ARGUED ON MAY 21, 2008

OPINION FILED **07/16/08**

MEIERHENRY, Justice.

[¶1.] A jury found Timothy Bergee guilty of Distribution of a Controlled Substance; Possession of Controlled Substance; Possession of Marijuana Less than Two Ounces; Driving While License Suspended; and Possession of Drug Paraphernalia. Bergee appeals the conviction, and we affirm.

## FACTS

[¶2.] During the month of February, within the span of seven days, eight Belle Fourche businesses were burglarized. All of the businesses were on or near Fifth Avenue, also known as U.S. Highway eighty-five. In six of the burglaries, the perpetrators entered the establishments via the back or side entrance or window.

[¶3.] Concerned about the prospect of future burglaries, Belle Fourche Police Captain Larry Roberdeau called upon reserve officers to increase patrol activities and positioned unmarked vehicles to stake-out different locations around town. Three days after the last reported burglary, Officer Russell Waterbury was patrolling Fifth Avenue, and Officer Paul Sutter was watching for suspicious activity atop a hill with binoculars. From his vantage point, Sutter could observe Fifth Avenue and parts of the Big D gas station and its surrounding parking lot. The Big D was closed for the night.

[¶4.] A little before 1:00 a.m. Sutter observed a truck drive out of the Big D's parking lot with its headlights off. He reported his observation to Waterbury, who immediately drove to the parking lot to investigate. As Waterbury arrived at the parking lot, a second car driven by Bergee emerged from behind the Big D and drove toward Fifth Avenue.

[¶5.]        Concerned about the late-night suspicious activity in light of the recent rash of Fifth Avenue burglaries, Waterbury stopped Bergee's vehicle before it could leave the parking lot. Waterbury drove his vehicle along side the Bergee vehicle; and from the driver's seat of his patrol car, Waterbury spoke to Bergee. Waterbury inquired into Bergee's identity and purpose for being behind the closed gas station at such a late-night hour. Bergee claimed to have met a friend behind the Big D and now was on his way back to North Dakota. Waterbury then requested Bergee's driver's license. At that point, Bergee became very nervous and jumpy. He spoke quickly and appeared to be in a hurry. He also avoided eye contact with Waterbury. Bergee admitted that he did not have a driver's license; however, he did provide his name and birth date.

[¶6.]        Waterbury then called in a license plate and driver's license check. The driver's license check revealed that three states had suspended Bergee's driving privileges. Waterbury informed Bergee that he would have to issue a citation for Driving Under a Suspension, a violation of SDCL 32-12-65(2), and that Bergee would not be permitted to drive the vehicle any further. Nevertheless, Bergee stated, "Just give me the ticket . . . I need to get home [to North Dakota]," and, "I need to get home [to North Dakota]." These statements along with his suspicious demeanor amplified Waterbury's suspicions. Based on his training and experience, Waterbury believed that Bergee had drugs or contraband inside the vehicle. Waterbury then contacted Sutter for assistance. Sutter was a certified drug dog handler and had his drug dog, Brook, with him on patrol. Sutter arrived at the location within a couple of minutes and took Brook out of his vehicle. Brook

immediately indicated that she smelled the scent of a controlled substance by vigorously scratching on Bergee's driver side door. Brook was pulled back and permitted another chance to inspect the vehicle. Again, she scratched the driver side door indicating that a controlled substance odor was emanating from the scratched area.

[¶7.] After Brook's performance, the officers asked Bergee if he had anything that they should know about in the vehicle. Bergee responded that he had "a little [personal stuff] in a green container." The green container held a green leafy substance and a white powdery substance along with drug paraphernalia. The leafy substance field tested positive for marijuana, and the white powder later tested as methamphetamine. After a more thorough search of the vehicle, the officers found nine more grams of methamphetamine.

[¶8.] Bergee moved to suppress the drug evidence as fruit of an unlawful detention and the alleged unreliability of the drug dog. Both requests were denied. Bergee appeals claiming that the trial court erred by denying Bergee's Motion to Suppress. He claims that the stop and subsequent search of his vehicle violated his rights under the United States and South Dakota Constitutions. US Const amend IV; SD Const art VI, § 11. He also claims that the trial court erred in its determination concerning the reliability of the drug dog and its failure to grant his motion for a drug dog expert.

## DECISION

*Whether the officer had reasonable suspicion to stop Bergee's vehicle.*

[¶9.]        Bergee contends that Officer Waterbury lacked reasonable suspicion to stop his vehicle, and therefore the stop constituted a violation of his constitutional right to be free from unreasonable search and seizure.  He further claims that all evidence derived from the stop must be suppressed as a result of the constitutional violation.  "Our review of a motion to suppress based on an alleged violation of a constitutionally protected right is a question of law examined de novo."  State v. Hayen, 2008 SD 41, ¶5, __ NW2d __ (quoting State v. Muller, 2005 SD 66, ¶12, 698 NW2d 285, 288 (citations omitted)).

[¶10.]        Brief investigatory traffic stops are permitted when based on objectively reasonable and articulable suspicion that criminal activity has occurred or is occurring.  *See id.*  "While the stop may not be the product of mere whim, caprice or idle curiosity, it is enough that the stop is based upon 'specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion.'"  *Muller*, 2005 SD 66, ¶14, 689 NW2d at 289 (citation omitted).  "[I]n making a reasonable suspicion determination, we must '[l]ook at the *'totality of the circumstances'* of each case to see whether the detaining officer has a *'particularized and objective basis'* for suspecting legal wrongdoing."  State v. Aaberg, 2006 SD 58, ¶25, 718 NW2d 598, 604 (Zinter, J., concurring) (emphasis added) (quoting State v. Kenyon, 2002 SD 111, ¶15, 651 NW2d 269, 273-74 (quoting United States v. Arvizu, 534 US 266, 273, 122 SCt 744, 750-51, 151 LEd2d 740, 749 (quoting United States v. Cortez, 449 US 411, 417-18, 101 SCt 690, 694-95, 66 LEd2d 621, 628-29 (1981)))).  The "investigative detention must be

temporary and last no longer than is necessary to effectuate the purpose of the stop." *Hayen,* 2008 SD 41, ¶7, __ NW2d __ (citation omitted).

[¶11.]     In this case, Waterbury had reasonable suspicion to make the inquiry. He knew that eight establishments had been burglarized within the past two weeks on or near this Fifth Avenue location. He knew that six of these break-ins happened on the back or side portion of the business. He had just received Officer Sutton's observation that a vehicle had left the Big D's parking lot with its lights off. He immediately drove to the Big D's parking lot and saw Bergee's vehicle emerge from behind the closed gas station at 1:00 a.m. Based on his information and knowledge, Waterbury stopped the vehicle to investigate the driver's identity and the purpose for being behind the Big D at this late-night hour. Considering the totality of the circumstances, Waterbury was objectively justified in suspecting that a crime may have occurred. Thus, he had reasonable suspicions for the investigative stop. Furthermore, after observing Bergee's nervous demeanor and admission to driving without a license, Waterbury was justified in continuing the stop until the citation and any other relevant matters were satisfied. *See* United States v. Dawdy, 46 F3d 1427, 1429 (8thCir 1995) (citation omitted) (stating that "[f]actors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence"). The trial court did not err in finding that the officer had reasonable articulable suspicion to stop Bergee's vehicle.

*Whether the subsequent search of Bergee's vehicle was unconstitutional.*

[¶12.]     Next, Bergee claims that the search of the vehicle lacked probable cause because Brook, the certified drug dog, lacked reliability.  Even if we were to assume that the dog was unreliable, Bergee's admission to Officer Sutton that he had drugs in the vehicle constituted probable cause for the search.  After the drug dog had twice signaled that Bergee's vehicle contained the odor of controlled substance(s), Sutter asked Bergee if there was something in the vehicle that the police should know about.  Bergee put his head down, sighed and exclaimed to the officers that "I got a little [personal stuff] in a green container" and then pointed to a container where marijuana and methamphetamine were located.  The circumstances surrounding this comment were sufficient for the officer to conclude that Bergee was admitting to possessing illicit items in the vehicle.  *See* State v. Beckett, 383 NW2d 66, 69 (IowaCtApp 1985) (quoting State v. Hamilton, 236 NW2d 325, 330 (Iowa 1976)) ("Admissions by adoption or acquiescence can only be established by 'the totality of circumstances viewed in terms of probable human behavior.'").

[¶13.]     Based on our determination that the reliability of the drug dog was irrelevant to the constitutionality of the search, we need not discuss Bergee's claim that the trial court abused its discretion in denying Bergee's motion for a drug dog expert.  We affirm.

[¶14.]     GILBERTSON, Chief Justice and SABERS, KONENKAMP, and ZINTER, Justices, concur.