#25614-a-JKM

**2010 S.D. 101**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                         Plaintiff and Appellee,

v.

ANNETTE M. HERREN,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

HONORABLE DAVID R. GIENAPP
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KIRSTEN E. JASPER
Assistant Attorney General                         Attorneys for plaintiff
Pierre, South Dakota                         and appellee.

MICHAEL E. McCANN of
McCann, Ribstein & McCarty, P.C.                         Attorneys for defendant
Brookings, South Dakota                         and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 15, 2010

OPINION FILED **12/22/10**

#25614

MEIERHENRY, Justice

[¶1.] A Brookings County Deputy Sheriff stopped Annette Herren's vehicle primarily because of his observation that it hesitated too long (about 40 seconds) at a stop sign at a rural intersection. The stop resulted in Herren's arrest for driving while under the influence of alcohol. Herren challenges the constitutionality of the investigatory stop, claiming that the arresting officer did not have reasonable suspicion to stop her. The trial court determined that the officer had reasonable suspicion based on her delay at the stop sign. Herren appeals the trial court's ruling. We hold that the totality of the circumstances – the stop-sign delay along with an anonymous tip concerning a possible drunk driver – provided the officer with reasonable suspicion to proceed with the investigatory stop. Affirmed.

## FACTS

[¶2.] The facts surrounding the stop are not disputed. At approximately 9:00 p.m. on August 2, 2009, the officer received a radio communication from dispatch that an anonymous male had called to report that a possible drunk driver would be driving on Highway 14 from Flandreau, South Dakota, to Toronto, South Dakota. The anonymous caller described the vehicle as a "blue Ford Durango." In response, the officer drove to a rural intersection at Highway 14 and 478th Avenue between Flandreau and Toronto. The officer parked his patrol car and waited.

[¶3.] The officer eventually saw a vehicle approach the intersection and stop at the stop sign. He testified at the preliminary hearing that "when [the vehicle] came to stop at the stop sign it appeared to be a Dodge Durango." The vehicle remained stopped for approximately 40 seconds. After the vehicle began to drive

-1-

through the intersection, the officer immediately "pulled in behind the vehicle, activated [his] red lights . . . and made a traffic stop on the vehicle." The officer said he made the traffic stop because the driver stopped too long at the intersection for no apparent reason.

[¶4.]     At the suppression hearing, the officer explained why he stopped Herren:

| | |
|---|---|
| State's Attorney: | At the preliminary hearing, [Deputy], you had testified that you would have stopped this vehicle even though without any prior warning that the driver might have been intoxicated; do you remember that? |
| Deputy: | Yes, I do. |
| State's Attorney: | And I believe you testified that was because of the length of this stop? |
| Deputy: | That is correct. |
| State's Attorney: | And why would you have stopped the vehicle as a result of that? |
| Deputy: | Through my training and experience the length of stop as this one has, excuse me, as this one, that is an indicator of a possible impaired driver. |
| State's Attorney: | That is something that you learned through your training and experience? |
| Deputy: | Yes, sir. |
| State's Attorney: | And from what you had observed there was no reason for this vehicle to stop at this stop sign for some 45 seconds? [1] |

---

1.    The video of the stop indicates the vehicle was stopped for 30 seconds. The officer said he activated the video camera about 10 seconds after she stopped.

(continued . . .)

| | |
|---|---|
| Deputy: | That is correct. |
| State's Attorney: | There was no traffic to prevent the driver from proceeding? |
| Deputy: | No, there was not. |

. . .

(on cross-examination)

| | |
|---|---|
| Herren's Attorney: | And so the only reason you stopped her was because she stopped at the stop sign for some 30 seconds or so? |

. . .

| | |
|---|---|
| Deputy: | The reason I stopped the vehicle was for the extended period of time that she stopped at the stop sign, being an indicator of impaired driving. |
| Herren's Attorney: | And that's the only reason you stopped her, wasn't it? |
| Deputy: | I was acting on the possible anonymous tip of an impaired driver with the vehicle matching the description as a Durango and the length of the stop, that's why I stopped her. |

[¶5.] Relying on the officer's testimony, the trial court found that the officer "stopped [Herren's] vehicle because of its inordinate delay at the stop sign and not because of the anonymous tip." Based on its findings, the trial court concluded:

That the fact that the vehicle was stopped at the stop sign for longer than the amount of time normally used considering the total lack of any traffic which would have warranted such extended stopping time constituted an articulable fact which

_____

(. . . continued)
Based on that evidence, Herren's stop would have been approximately 40 seconds rather than the 45 seconds testified to.

under the totality of the circumstances warranted the Deputy's actions; the stop was not the product of mere whim, caprice or idle curiosity.

## ISSUE

[¶6.]        Did the officer have reasonable suspicion to make an investigatory stop of Herren's vehicle, that is, did the officer have a particularized and objective basis for suspecting legal wrongdoing under the totality of the circumstances?

## ANALYSIS

[¶7.]        We review the trial court's findings of fact under the clearly erroneous standard and the conclusions of law de novo. *State v. Sound Sleeper*, 2010 S.D. 71, ¶ 12, 787 N.W.2d 787, 790 (citing *State v. Ludemann*, 2010 S.D. 9, ¶ 14, 778 N.W.2d 618, 622). The parties do not challenge the trial court's findings as clearly erroneous. Because constitutional questions are reviewed de novo, we are not bound by the trial court's reasoning. *State v. Wendling*, 2008 S.D. 77, ¶ 8, 754 N.W.2d 837, 839. An investigatory traffic stop must be "based on objectively reasonable and articulable suspicion that criminal activity has occurred or is occurring." *State v. Bergee*, 2008 S.D. 67, ¶ 10, 753 N.W.2d 911, 914. The United States Supreme Court directs reviewing courts as follows:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "'hunch'" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a

preponderance of the evidence standard.

*United States v. Arvizu*, 534 U.S. 266, 273-74, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citations omitted).

[¶8.]    Recognizing that the term "reasonable suspicion" cannot be precisely defined, we have said that it "is a common-sense and non-technical concept dealing with the practical considerations of everyday life." *State v. Quartier*, 2008 S.D. 62, ¶ 10, 753 N.W.2d 885, 888 (citations omitted). We determine reasonable suspicion based on an objective standard. *State v. Hodges*, 2001 S.D. 93, ¶ 16, 631 N.W.2d 206, 210-11. Reasonable suspicion to stop must be based on "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *State v. Akuba,* 2004 S.D. 94, ¶ 15, 686 N.W.2d 406, 413 (citation omitted). "[I]n making a reasonable suspicion determination, we must [l]ook at the *'totality of the circumstances'* of each case to see whether the detaining officer has a *'particularized and objective basis'* for suspecting legal wrongdoing.*" Bergee*, 2008 S.D. 67, ¶ 10, 753 N.W.2d at 914 (citations omitted). "The stop may not be the product of mere whim, caprice or idle curiosity." *Id.*

*The delay at the stop sign, alone, did not create reasonable suspicion.*

[¶9.]    The trial court determined that the delay at the stop sign created reasonable suspicion of criminal activity. Although the law does not specify how long a vehicle should stop at a stop sign, the officer testified that, based on his training and experience, a lengthy stop at a stop sign is an indication of impaired driving. Herren points out that the officer did not "see her driving erratically or irregularly, and he did not see her violate any traffic laws." Thus, Herren refutes

the officer's claim that the delayed stop created reasonable suspicion of impaired driving. The State, however, does not claim that the delayed stop by itself created reasonable suspicion, but that the delayed stop was a factor to consider under the totality of the circumstances.

[¶10.] We first address whether Herren's delayed stop created reasonable suspicion as the trial court determined. Other jurisdictions, under similar facts, have found delayed stops at stop signs insufficient to create reasonable suspicion to stop a vehicle. In *State v. Fields*, the Wisconsin Court of Appeals held that a five-to-ten-second delay at a stop sign in a rural area without other traffic was not, by itself, sufficient to permit an officer to lawfully stop a vehicle. 239 Wis.2d 38, 47, 619 N.W.2d 279, 284 (2000). The *Fields* court reasoned that even though the officer believed, based on his training and experience, that stopping at a stop sign for an extended time was an indication of illegal activity, such an extended stop was not a "specific and articulable fact" to "justify reasonable suspicion that Fields had committed or was committing an unlawful act." *Id.* at 48, 619 N.W.2d at 285.

[¶11.] In *State v. Hein*, the Washington Court of Appeals held that a five-to-seven-second delay at a stop sign did not give an officer reasonable suspicion. 2002 WL 1825752 (Wash.Ct.App.). In *Hein*, the court determined that a vehicle's delay before turning at a stop light after the light turned green was not, by itself, enough to support reasonable suspicion. *Id.* As support for its holding, *Hein* cited *State v. DeArman*, 54 Wash.App. 621, 625, 774 P.2d 1247, 1249 (1989). In *DeArman*, the Washington Court of Appeals held that "the simple fact that [Defendant] remained

motionless at a stop sign for [45 to 60] seconds [did] not rise to the level of providing a reasonable suspicion that he was engaged in criminal activity." *Id.*

[¶12.] Finally, in *Stiffler v. State*, the Florida District Court of Appeals held that an officer lacked reasonable suspicion to stop a vehicle after it stopped at a stop sign for "a long time." 744 So.2d 1187, 1188 (Fla.Dist.Ct.App. 1999). This case included additional factors, including that the stop was in a high-crime area and that the defendant fidgeted toward his pant pocket. *Id.* The *Stiffler* Court determined that while these facts were "suspicious," they did not rise to reasonable suspicion. *Id.*

[¶13.] Generally, these cases hold that a delayed stop at an intersection does not amount to reasonable suspicion of criminal activity. We find their reasoning persuasive and applicable to the present case. Thus, contrary to the trial court's analysis, we hold that Herren's 40-second stop at the intersection, alone, does not rise to the level of reasonable suspicion. *See Bergee*, 2008 S.D. 67, ¶ 10, 753 N.W.2d at 914 (citation omitted).

*The stop-sign delay coupled with the anonymous tip created reasonable suspicion under the totality of the circumstances.*

[¶14.] Although we conclude that the delayed stop, alone, did not constitute reasonable suspicion, our analysis does not end here. Since our review of asserted constitutional violations is de novo, we are not bound by the trial court's rationale. *Sound Sleeper*, 2010 S.D. 71, ¶ 12, 787 N.W.2d at 790 (citing *Ludemann*, 2010 S.D. 9, ¶ 14, 778 N.W.2d at 622). Our determination must be based on an objective standard that considers whether "the facts observable to the law enforcement officer at the time of the stop entitle an officer of reasonable caution to believe the action

taken was appropriate[.]" *Hodges*, 2001 S.D. 93, ¶ 16, 631 N.W.2d at 210-11 (quoting *State v. Vento*, 1999 S.D. 158, ¶ 8, 604 N.W.2d 468, 470). We make this determination based on the "totality of the circumstances." *See Arvizu*, 534 U.S. at 273, 122 S.Ct. at 750.

[¶15.]     The State on appeal does not rely solely on the lengthy stop. Instead, the State claims that under the totality of the circumstances the officer's observation of Herren's "forty-second delay . . . coupled with the anonymous tip and the corroborating observations" sufficiently established reasonable suspicion. The State argues that "[j]ust because [the deputy] stated he relied on the unusually long stop as the sole basis for pulling Herren over does not preclude this Court from considering the tip in the totality of the circumstances."

[¶16.]     Although the officer testified that his main reason for stopping Herren's vehicle was the lengthy stop at the stop sign, he also indicated that he was acting on the anonymous tip. He said: "I was acting on the possible anonymous tip of an impaired driver with the vehicle matching the description as a Durango and the length of the stop, that's why I stopped her." Reasonable suspicion depends on whether the officer had a "particularized and objective basis for suspecting legal wrongdoing" under the totality of the circumstances. We, therefore, turn our attention to the tip and analyze whether it, with the stop-sign delay, amounted to reasonable suspicion.

[¶17.]     The degree to which law enforcement can rely on an anonymous tip depends on the tip's degree of reliability. *State v. Scholl*, 2004 S.D. 85, ¶ 9, 684 N.W.2d 83, 86. The tip's degree of reliability depends on the quantity and quality of

the tipster's information. *Id.* As was pointed out by the Eighth Circuit in *United States v. Wheat*, "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite *quantum of suspicion* than would be required if the tip were more reliable." *Scholl*, 2004 S.D. 85, ¶ 9, 684 N.W.2d at 86 (emphasis added) (citing *Wheat*, 278 F.3d 722, 724 (8th Cir. 2001)).

[¶18.] The State claims that the tip was reliable because the "tipster provided law enforcement with the model, make and color of the suspect vehicle, that a female was driving, and the route the possible intoxicated driver would travel." The State further notes "the fact that the tipster knew the rural route the suspect driver would travel indicated he had intimate knowledge regarding the driver and her actions." Herren, on the other hand, claims that the tip lacked sufficient quality and quantity of information to be reliable.

[¶19.] There were some problems with the tip. Alone, the tip did not provide the officer with reasonable suspicion to stop the vehicle. *See id.* All the record indicates is that the tipster told law enforcement that a possible intoxicated female was driving a blue Ford Durango from Flandreau to Toronto, South Dakota. How the anonymous tipster acquired his information is unknown. *See id.* ¶ 14, 684 N.W.2d at 88. The tipster did not provide a license plate number and gave a confusing description of the vehicle. *See id.* The tipster described the vehicle as a Ford Durango, which the officer knew was an invalid description because, as the officer explained, it could not have been a Ford Durango since Dodge makes a Durango, not Ford. The tipster described the vehicle as blue; Herren's vehicle was green.

[¶20.] Without a license plate number or accurate description of the make and color of the vehicle, the officer had no way to verify whether the car he saw at the stop sign was the same one reported. *See id.* The officer acted on the tip by driving to the highway specified by the tipster where he eventually saw a Durango. Although the trial court discounted the anonymous tip as the reason for the stop, it can at least be considered as part of the totality of the circumstances. Under the totality of the circumstances, the tip added to the officer's quantum of suspicion even though the tip's degree of reliability was low.

*Conclusion*

[¶21.] Independently, neither the 40-second stop at the intersection nor the anonymous tip rise to the level of reasonable suspicion of legal wrongdoing. But under the totality of the circumstances, the tip *and* delayed stop increased the quantum of proof. The quantum of proof necessary for reasonable suspicion is somewhere above a hunch but less than probable cause.[2] *Arvizu*, 534 U.S. at 274, 122 S.Ct. at 750. Reasonable suspicion merely requires that an officer have a "particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 274, 122 S.Ct. at 750 (citation omitted).

[¶22.] We hold that, under the totality of the circumstances, the officer had a "particularized and objective basis for suspecting legal wrongdoing." The officer (1) received a tip that a possible drunk driver in a Durango was driving toward Toronto

---

2. Proof of probable cause exists when the facts "would lead a reasonable and prudent person to believe it fairly probable that a crime has been committed. . . ." *State v. Hanson*, 1999 S.D. 9, ¶ 14, 588 N.W.2d 885, 890 (quoting *State v. Zachodni*, 466 N.W.2d 624, 629 (S.D. 1991)).

from Flandreau and (2) saw a vehicle generally matching that description hesitating for 40 seconds at an intersection. These facts, together, gave the officer more than a hunch of legal wrongdoing. *Bergee*, 2008 S.D. 67, ¶ 10, 753 N.W.2d at 914 (citation omitted). While individually neither the tip nor the delay at the intersection would have satisfied the reasonable suspicion standard, together they provided the requisite quantum of proof necessary to justify the investigatory stop.

[¶23.]    Affirmed.

[¶24.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.