#26095-a-LSW

**2012 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

RYAN LEE RADEMAKER,                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
GRANT COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RONALD K. ROEHR
Judge

* * * *

MARTY J. JACKLEY
Attorney General

TIMOTHY J. BARNAUD
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.


GEORGE B. BOOS of
Boos & Grajczyk, LLP
Milbank, South Dakota                     Attorneys for defendant and
                                          appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 14, 2012

OPINION FILED **04/18/12**

#26095

WILBUR, Justice

[¶1.]     Ryan Rademaker appeals his conviction of driving while under the influence of alcohol arguing that the Fourth Amendment of the United States Constitution required the trial court to suppress evidence arising out of the stop of his car.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]     At approximately 1 a.m. on a Sunday morning, Rademaker drove a friend to her home east of Milbank.  A police officer and a highway patrol officer were conducting a sobriety checkpoint on the highway Rademaker was traveling.  The officers had placed signs with flashing amber lights approximately 100 yards north and south of the checkpoint indicating to drivers that there was a checkpoint ahead.

[¶3.]     The officers observed Rademaker approach the checkpoint from the north, drive past the northern sign, and turn onto a gravel road which allowed him to travel away from the checkpoint.  Rademaker would later testify that he was not avoiding the checkpoint but rather following his usual route when taking his friend home.

[¶4.]     The highway patrol officer instructed the police officer to make contact with Rademaker to determine why he was avoiding the checkpoint.  The police officer later testified that he understood "make contact" to mean he should stop Rademaker's car for avoiding the checkpoint.  The police officer also testified that, after he got into his patrol car and followed Rademaker, he observed Rademaker make a wide turn, but that he was unsure if the turn violated the law.

Additionally, while following Rademaker, the officer observed that Rademaker was driving at an excessive speed for the conditions, perhaps as fast as 70 miles per hour. However, although the trial court noted in its memorandum opinion that it was aware of this observation, it reasoned that because the officer "was unable to testify that he observed the excessive speed prior to activating his red lights," the observation could not serve as a legal basis for the stop.

[¶5.] Approximately three-quarters of a mile east of the highway, the police officer caught up to Rademaker and stopped his car. Upon approaching Rademaker, the police officer noted that Rademaker smelled of alcohol and exhibited various other signs of intoxication. Rademaker later admitted to the police officer that he had been drinking and submitted to a preliminary breath test which indicated his blood alcohol level was .185. A subsequent blood test indicated a blood alcohol level of .182.

[¶6.] The police officer arrested Rademaker for driving under the influence. Rademaker moved to suppress all evidence obtained from the stop arguing that the stop of his car violated his Fourth Amendment right to be free from unreasonable search and seizures. The trial court denied his motion and convicted Rademaker of driving under the influence. Rademaker appeals the trial court's denial of his motion to suppress.

## STANDARD OF REVIEW

[¶7.] This Court's standard of review of a denial of a motion to suppress evidence is settled:

> A motion to suppress based on an alleged violation of a
> constitutionally protected right is a question of law reviewed de

novo. The trial court's factual findings are reviewed under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. This Court will not be restricted by the trial court's legal rationale.

*State v. Wright*, 2010 S.D. 91, ¶ 8, 791 N.W.2d 791, 794 (internal quotation marks omitted) (citations omitted). "In this case, [Rademaker] does not contend that any of the [trial] court's findings of fact are clearly erroneous. Therefore, we review this matter de novo." *State v. Quartier*, 2008 S.D. 62, ¶ 9, 753 N.W.2d 885, 888.

## ANALYSIS AND DECISION

[¶8.] The Fourth Amendment of the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" We have previously held that "[t]he Fourth Amendment's prohibition against unreasonable searches and seizures applies when a [car] is stopped by law enforcement." *Wright*, 2010 S.D. 91, ¶ 10, 791 N.W.2d at 794 (citations omitted).

[¶9.] Generally, to comply with the Fourth Amendment requirements, "police . . . must obtain a warrant based on probable cause and issued by a neutral magistrate before searching or seizing an individual's property." *Id.* ¶ 9. However, as an exception to this general rule, an officer may stop a car, without obtaining a warrant, if there is "reasonable suspicion . . . that criminal activity may be afoot." *Id.* ¶ 10. Therefore, because the police officer did not obtain a search warrant before stopping Rademaker's car, the central issue presented by this case is whether there was reasonable suspicion that Rademaker may have been engaged in criminal activity to justify the stop.

[¶10.] In *State v. Thill*, 474 N.W.2d 86 (S.D. 1991), which involved reasonable suspicion, and the apparent avoidance of a sobriety checkpoint, an officer at the checkpoint observed the defendant's car "turn into a driveway at approximately the location of the patrol car with the flashing amber lights. [The officer] watched as [the defendant] stopped in the driveway, backed out into the street and proceeded . . . in the direction" from which he came. *Id.* at 86. The officer pulled the defendant's car over and arrested the defendant for driving while under the influence. *Id.* After being convicted, the defendant appealed to this Court arguing, like Rademaker, that the trial court should have suppressed the evidence because there was no reasonable suspicion to stop his car as required by the Fourth Amendment. *Id.* at 86-87. This Court noted that the issue of whether avoidance of a sobriety checkpoint constitutes reasonable suspicion has divided courts but held, in a 3-2 decision, that the defendant's "turnabout at the entrance of the roadblock and his subsequent circuitous route constituted a reasonable suspicion that [the defendant] was in violation of the law[.]" *Id.* at 87-88.

[¶11.] Rademaker directs this Court to a series of Eighth Circuit Court of Appeals decisions which have held, since our decision in *Thill*, that exiting a highway immediately after observing a sign for a checkpoint does not, alone, give rise to reasonable suspicion. *See, e.g.*, *United States v. Carpenter*, 462 F.3d 981, 986-87 (8th Cir. 2006) ("[E]xiting a highway immediately after observing signs for a checkpoint 'is indeed suspicious, even though the suspicion engendered is insufficient for Fourth Amendment purposes.'" (quoting *United States v. Williams*, 359 F.3d 1019, 1021 (8th Cir. 2004))). We have previously followed Eighth Circuit

precedent in determining reasonable suspicion. *See, e.g.*, *State v. Iverson*, 2009 S.D. 48, ¶ 15, 768 N.W.2d 534, 538. Thus, in light of this line of case law, we join the Eighth Circuit in holding that avoidance of a checkpoint *alone* is insufficient to form a basis for reasonable suspicion. However, the Eighth Circuit was clear that checkpoint avoidance is indeed suspicious and thus our analysis does not end here. Next, we must determine if other facts were present to give rise to reasonable suspicion.

[¶12.] Rademaker argues that "[t]he only conduct observed by the officers" at the time the officers made the decision to stop was that Rademaker braked and turned onto a public road. However, we analyze whether there was reasonable suspicion to stop a car not when the decision to stop was made; but rather, when the stop was effectuated. *In re Herrera*, 393 N.W.2d 793, 794 (S.D. 1986); *see also State v. Herren*, 2010 S.D. 101, ¶ 14, 792 N.W.2d 551, 555 ("Reasonable suspicion" is an objective standard, meaning we "consider[] whether the facts observable to the law enforcement officer at the time of the stop entitle an officer of reasonable caution to believe the action taken was appropriate."). Thus, we must look at all the facts available to the officer at the time the stop was effectuated and determine whether reasonable suspicion existed based on the "totality of the circumstances." *Herren*, 2010 S.D. 101, ¶ 14, 792 N.W.2d at 556.

[¶13.] In addition to the checkpoint avoidance, the trial court also relied on two other suspicious factors: the time of day, 1 a.m. and the police officer's observation that Rademaker made an unusually wide, but legal, turn. Both this Court and the Eighth Circuit have used the time of day as a "factor" in determining

whether reasonable suspicion exists. *See, e.g., State v. Bergee*, 2008 S.D. 67, ¶ 11, 753 N.W.2d 911, 914 (citing *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995)). Likewise, this Court recently held that a wide turn, even if not in violation of any traffic laws, may be sufficient in some circumstances to engender reasonable suspicion. *State v. Dahl*, 2012 S.D. 8, ¶¶ 9-10, __ N.W.2d __, __. Additionally, because we are not bound by the trial court's rationale, we also note that the arresting officer observed Rademaker driving at an excessive speed for the conditions. Although the officer made this observation after activating his lights, we can still weigh it in determining the totality of the circumstances because the arresting officer observed it prior to effectuating the stop.

[¶14.]    Given the totality of the circumstances at the time the officer effectuated the stop of Rademaker's car, an "officer of reasonable caution" could have concluded that an individual who turns away from a checkpoint at 1 a.m., executes an unusually wide turn, and is driving at an excessive speed for the conditions may be intoxicated or engaged in some other sort of criminal behavior. Thus we hold that, although Rademaker's apparent avoidance of the checkpoint alone was not enough to engender reasonable suspicion, when reviewed under the totality of the circumstances, there was the "requisite quantum of proof necessary to justify the investigatory stop." *Herren*, 2010 S.D. 101, ¶ 22, 792 N.W.2d at 557.

## CONCLUSION

[¶15.]    Based on the totality of the circumstances, the officer had reasonable suspicion to stop Rademaker's car, and thus, the stop did not violate Rademaker's Fourth Amendment rights. We affirm the trial court's ruling on the issue.

#26095

[¶16.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.