#27547-a-GAS
**2016 S.D. 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

TERRON R. OLSON,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE GREGORY J. STOLTENBURG
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CAROLINE SRSTKA
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
                                          appellee.

DONALD M. MCCARTY
BENJAMIN L. KLEINJAN of
Helsper, McCarty, Mahlke
  & Kleinjan, P.C.
Brookings, South Dakota                Attorneys for defendant and
                                          appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2016
OPINION FILED **03/16/16**

SEVERSON, Justice

[¶1.]      Terron Olson appeals his convictions for driving under the influence and having an open container of alcohol in a motor vehicle. Olson asserts that the law enforcement officer lacked reasonable suspicion to initiate the traffic stop. Therefore, he alleges that the magistrate court and circuit court erred by failing to suppress evidence from the traffic stop. We affirm.

**Background**

[¶2.]      At approximately 2:50 a.m. on November 1, 2014, Officer Burgard was traveling eastbound on 7th Street in Brookings, South Dakota. As he approached the intersection of 12th Avenue and 7th Street, he observed a vehicle traveling northbound on 12th Avenue. The vehicle came to a complete stop at the intersection for 15 to 30 seconds even though there was no stop sign or traffic signal which required the vehicle to stop. East- and west-bound traffic is subject to a stop sign at that intersection, so Burgard came to a complete stop upon reaching the intersection. After Burgard stopped his vehicle, the other vehicle turned west onto 7th Street, driving past Burgard's vehicle. Burgard activated his audio and visual recorder and initiated a traffic stop. The driver of the vehicle identified himself as Terron Olson. Burgard determined that Olson had been consuming alcohol and placed him under arrest for driving under the influence.

[¶3.]      On January 9, 2015, Olson filed a motion to suppress evidence from the traffic stop. He alleged that the officer lacked reasonable suspicion to stop Olson's vehicle. An evidentiary hearing before a magistrate court was held on January 26, 2015. The court denied Olson's motion. A stipulated court trial was

held on May 11, 2015. The court found Olson guilty of driving under the influence and of having an open container of alcohol in a motor vehicle. Olson appealed his convictions to the circuit court, which upheld the magistrate court's determination that the officer had reasonable suspicion to initiate the traffic stop, thereby refusing suppression of the evidence. On appeal to this Court, Olson asserts that the officer lacked reasonable suspicion to initiate the traffic stop.

## Standard of Review

[¶4.] We review de novo a motion to suppress based on an alleged violation of a constitutionally protected right. *State v. Rademaker*, 2012 S.D. 28, ¶ 7, 813 N.W.2d 174, 176. We review the trial court's factual findings "under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. This Court will not be restricted by the trial court's legal rationale." *Id.* (quoting *State v. Wright*, 2010 S.D. 91, ¶ 8, 791 N.W.2d 791, 794).

## Analysis

[¶5.] "An investigatory traffic stop must be 'based on objectively reasonable and articulable suspicion that criminal activity has occurred or is occurring.'" *State v. Herren*, 2010 S.D. 101, ¶ 7, 792 N.W.2d 551, 554 (quoting *State v. Bergee*, 2008 S.D. 67, ¶ 10, 753 N.W.2d 911, 914). The Supreme Court has directed appellate courts reviewing a reasonable-suspicion determination to "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740

(2002)). "The stop may not be the product of mere whim, caprice or idle curiosity." *Id.* ¶ 8 (quoting *Bergee*, 2008 S.D. 67, ¶ 10, 753 N.W.2d at 914). However, officers may

> draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

*Id.* ¶ 7 (quoting *Arvizu*, 534 U.S. at 273-74, 122 S. Ct. at 750-51).

[¶6.] We have previously determined that, on its own, a delayed stop at a stop sign, even for 40 seconds, does not rise to the level of reasonable suspicion. *Id.* ¶ 13, 792 N.W.2d at 555. Like the delayed stop at a stop sign in *Herren*, coming to a stop at an unmarked intersection is not a traffic violation. However, in this case the State contends that there are sufficient additional facts that support a determination that reasonable suspicion existed. The State asserts that we must consider: (1) the lack of a stop sign, (2) the length of the stop, (3) the time of night, and (4) the officer's training. These facts are properly considered in our totality-of-the-circumstances analysis, and in this case they are sufficient to amount to reasonable suspicion.

[¶7.] "We determine reasonable suspicion based on an objective standard." *Id.* ¶ 8, 792 N.W.2d at 554. At the motions hearing, the officer testified that Olson's stop at an uncontrolled intersection was a main reason that the officer initiated a stop of Olson's vehicle. He testified that his training indicated that a stop at an

uncontrolled intersection indicates that someone may be impaired. The officer testified as follows:

> **Defense counsel:** And it's your testimony to the Judge today that you've received training that when someone stops at an intersection that that means that they may be impaired; is that what your testimony is?
>
> **Officer:** My testimony is that when they stop at an uncontrolled intersection.
>
> **Defense counsel:** Okay. And so we are square, it's your testimony to the Judge today that you have been trained that whenever anybody stops at an uncontrolled intersection that's an indicator that they may be under the influence of alcohol?
>
> **Officer:** Correct.

[¶8.] The State asserts that the time of night, being almost 3:00 a.m., was also a concern of the officer. *See Rademaker*, 2012 S.D. 28, ¶ 13, 813 N.W.2d at 177 (time of day is a factor in determining whether reasonable suspicion exists). At the suppression hearing, the officer testified that he thought it was "highly suspicious . . . at that time of day and really any time that somebody is stopped at an uncontrolled intersection unless there is some sort of impairment or other sign of distress." He testified that the duration of the stop indicated impairment as well. The State also argues that the length of time Olson stopped was unreasonably long. Olson stopped for 15 to 30 seconds when he was not required to stop at all—a critical fact that distinguishes this case from our *Herren* decision.

[¶9.] Olson relies on a somewhat similar case to assert that such a stop at the intersection is not unreasonable. In *State v. Reynolds*, 899 P.2d 540, 542 (Mont. 1995), the driver of a vehicle was traveling at a speed that was "bordering on . . . too fast," made a U-turn in a city park, and hesitated for approximately seven to ten seconds at an intersection where he had the right of way. In that case, the Montana

Supreme Court explained that the arresting officer "conceded that drivers on the left do not always grant the right of way and that the presence of a police car at the intersection could have an unnerving effect on a driver's normal driving routine." *Id.* at 543. Therefore, it determined that the circumstances did not create reasonable suspicion. *Id.* However, in this case, Olson did not have a stop sign or other traffic device requiring him to stop and yet he stopped for 15 to 30 seconds. As a result, his stop amounted to more than a mere hesitation as in *Reynolds* or a delayed stop at a stop sign such as in *Herren*.∗ Instead*,* it was a completely unnecessary and unreasonably long stop.

[¶10.] Olson also relies on *State v. Waldner*, 556 N.W.2d 681 (Wis. 1996), to argue that this one stop at an uncontrolled intersection is insufficient to amount to reasonable suspicion. In *Waldner*, an officer observed the defendant driving at a slow rate of speed. *Id.* at 683. The defendant briefly stopped his vehicle at an intersection where no stop sign or light required him to do so. *Id.* After the stop, he turned onto a cross-street and quickly accelerated. *Id.* The officer continued to follow the vehicle, witnessed it pull into a street-side parking space, and saw the defendant open the driver's side door and pour liquid out of a glass and onto the road. *Id.* When the defendant exited the vehicle, the officer approached the defendant and identified himself. *Id.* The defendant then began to walk away from

---

∗ The absence of a stop sign or traffic-control device at the intersection in this case also distinguishes it from *State v. Fields*, 619 N.W.2d 279 (Wis. Ct. App. 2000), which Olson has cited for additional support. Like this Court in *Herren*, the Wisconsin Court of Appeals determined that a "slightly longer than normal stop at [a] stop sign" did not "rise to the level of 'specific and articulable facts' necessary to justify reasonable suspicion that [the defendant] had committed or was committing an unlawful act." *Id.* at 285.

the police vehicle, at which time the officer asked the defendant to stop. *Id.* The Wisconsin Supreme Court reviewed the totality of the circumstances and determined that reasonable suspicion existed which justified the officer stopping the defendant. *Id.* at 685. In doing so, the court also explained that "any one of these facts, standing alone, might not add up to reasonable suspicion." *Id.* at 686.

[¶11.] Like the Wisconsin Supreme Court, after reviewing the totality of the circumstances, we conclude that standing alone, a brief stop by Olson where he had the right of way may not be sufficient to create reasonable suspicion that he was engaged in criminal behavior. However, in this case, the totality of the circumstances—which include that it was nearly 3:00 a.m., the stop lasted 15 to 30 seconds, and Olson stopped where he was not required to—led to reasonable suspicion of criminal activity. Although Olson testified at the suppression hearing that he simply wanted to see what the patrol car was going to do, the Supreme Court has made it clear that an officer "need not rule out the possibility of innocent conduct." *Navarette v. California*, ___ U.S. ___, 134 S. Ct. 1683, 1691, 188 L. Ed. 2d 680 (2014) (quoting *Arvizu*, 534 U.S. at 277, 122 S. Ct. at 753). After-the-fact explanations do not negate the officer's reasonable suspicion in this case. Our objective standard "considers whether 'the facts observable to the law enforcement officer at the time of the stop entitle an officer of reasonable caution to believe the action taken was appropriate.'" *Herren*, 2010 S.D. 101, ¶ 14, 792 N.W.2d at 555 (quoting *State v. Hodges*, 2001 S.D. 93, ¶ 16, 631 N.W.2d 206, 210-11). There is no evidence that the stop was a product of mere whim, caprice, or idle curiosity. Olson's conduct at roughly 3:00 a.m., coming to an unnecessary and lengthy stop at

an intersection where he had the right of way, amounted to a particularized and objective basis for suspecting that criminal activity was occurring. *See id.* ¶ 8, 792 N.W.2d at 554. Therefore, we affirm.

[¶12.] GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.