#28938-a-JMK
**2020 S.D. 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,            Plaintiff and Appellee,

    v.

GRADY WILLIAMS,                 Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GORDON SWANSON
Retired Judge

\* \* \* \*

JASON R. RAVNSBORG
Attorney General

PATRICIA ARCHER
Assistant Attorney General
Pierre, South Dakota                 Attorneys for plaintiff and
                                        appellee.

MATTHEW J. KINNEY of
Kinney Law, P.C.
Spearfish, South Dakota              Attorneys for defendant and
                                        appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 13, 2020
OPINION FILED **07/29/20**

#28938

KERN, Justice

[¶1.] Grady Williams was charged with possession of controlled substances, marijuana, paraphernalia, and a loaded firearm while intoxicated. He moved to suppress evidence obtained as a result of his encounter with police. The circuit court denied the motion. After a bench trial, Williams was convicted of several of the drug offenses. He appeals the circuit court's denial of his motion to suppress. We affirm.

**Facts and Procedural History**

[¶2.] The Sturgis Motorcycle Rally, which is held during the first full week of August, brings hundreds of thousands of tourists to the City of Sturgis (the City). In order to deal with the influx of visitors, the City hires additional police officers to assist in keeping the peace and enforcing the law. In 2018, the City hired Officer Jerod Hahn, a Nebraska Deputy Sherriff, to assist the Sturgis Police Department.

[¶3.] Just past 2:00 a.m. on the morning of August 11, 2018, when the bars were closing for the evening and many intoxicated patrons were leaving the area, Officer Hahn and his partner, Officer Martin Spencer, were on foot patrol. This duty involves providing a constant police presence to keep the peace in the downtown area of the City where many of the visitors congregate during the rally. The officers were near Main Street and Harley Davidson Way when they observed a man, later identified as Williams, and a woman walking by the Oasis Bar toward an alley. The officers witnessed Williams slow down and drop slightly behind the woman walking with him. The officers watched him reach for something near his

right hip. As he reached for the item, Officer Hahn saw a red laser light coming from Williams's direction and onto a windowless wall of the Oasis Bar.

[¶4.] Officer Hahn was familiar with weapons, including handguns with laser sights attached, due to his service as an armorer in the Navy and his training as a firearms instructor. Based on this experience, he believed Williams was removing a gun from a holster on his right hip and replacing it in the holster. The officers set off at a quick pace toward Williams. When they caught up to him, they announced that they were police officers. Officer Hahn saw that Williams's hands were empty, but found a gun holstered on his hip, which he removed from Williams's possession.

[¶5.] During this initial contact, Officer Hahn noticed that Williams's eyes were glossy, watery, and bloodshot. He also observed that Williams was slow to respond to commands and had slurred speech. When questioned regarding whether he had consumed alcohol, Williams admitted drinking two margaritas and three beers throughout the day.

[¶6.] Officer Spencer conducted a protective patdown search for additional weapons and discovered marijuana in Williams's pocket. Williams explained that he was from California and had "a medical marijuana license." Officer Spencer also found a folding knife in the right side of his vest and a small envelope with a tetrahydrocannabinol edible inside. Officers transported Williams to jail where, during the booking process, a baggie containing what was later determined to be methamphetamine was discovered on his person.

[¶7.] The State charged Williams with two counts of possession of a controlled substance (methamphetamine and tetrahydrocannabinol), possession of marijuana (less than two ounces), possession of a loaded firearm while intoxicated, and possession of drug paraphernalia. Prior to trial, Williams moved the circuit court to suppress the evidence obtained from the stop on the basis that it violated the Fourth Amendment of the United States Constitution and Article VI § 11 of the South Dakota Constitution, which protect against unreasonable searches and seizures. The circuit court held a suppression hearing at which it considered the audio and partial video recording of the encounter and testimony from Officer Hahn and Williams. It took the matter under advisement and later issued findings of fact, conclusions of law, and an order denying the motion.

[¶8.] In its conclusions of law, the court determined that the officers had reasonable suspicion to stop Williams based on their observations and Officer Hahn's experience and familiarity with firearms. The court, relying on *State v. Sleep*, 1999 S.D. 19, 590 N.W.2d 235, and *State v. Chase*, 2018 S.D. 70, 919 N.W.2d 207, held that the officers were justified in performing a protective patdown search of Williams's person, which led to the discovery of the evidence on his person and later in his clothing when he was searched at the jail. The court denied the motion to suppress, concluding the search was "done in accordance with *Terry* and its progeny." *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[¶9.] The parties tried the case to the court on March 7, 2019. At the conclusion of the bench trial, the court found Williams guilty of possession of a controlled substance (methamphetamine), possession of marijuana, and possession

of drug paraphernalia and acquitted him of the remaining charges. The court granted Williams suspended impositions of sentence on all three counts and placed him on unsupervised probation for one year under certain terms and conditions. Williams appeals, alleging the circuit court erred by denying his motion to suppress the evidence seized.

## Standard of Review

[¶10.] Our standard of review when assessing whether a circuit court erred in denying a motion to suppress evidence is well established. *State v. Haar*, 2009 S.D. 79, ¶ 12, 772 N.W.2d 157, 162. We review de novo "the circuit court's decision to grant or deny the motion." *Id.* Findings of fact are reviewed under the clearly erroneous standard, with "no deference [given] to its conclusions of law." *State v. Condon*, 2007 S.D. 124, ¶ 15, 742 N.W.2d 861, 866.

## Analysis and Decision

[¶11.] "The Fourth Amendment protects a person from 'unreasonable searches and seizures.'" *State v. Stanage*, 2017 S.D. 12, ¶ 7, 893 N.W.2d 522, 525 (quoting U.S. Const. amend. IV).[1] Therefore, citizens are guaranteed the "right to

---

1.  Williams makes the unsupported assertion that the South Dakota Constitution provides more protection against searches and seizures than the Fourth Amendment to the United States Constitution. It is well established that "this Court may interpret the South Dakota Constitution as providing greater protection to citizens of this state than is provided [to] them under the federal Constitution as interpreted by the United States Supreme Court." *State v. Schwartz*, 2004 S.D. 123, ¶ 15, 689 N.W.2d 430, 435. However, "[c]ounsel advocating a separate constitutional interpretation must demonstrate that the text, history, or purpose of a South Dakota constitutional provision supports a different interpretation from the corresponding federal provision." *State v. Kottman*, 2005 S.D. 116, ¶ 13, 707 N.W.2d 114, 120 (quoting *Schwartz*, 2004 S.D. 123, ¶ 34, 689 N.W.2d at 438).

(continued . . .)

personal security free from arbitrary law enforcement interference." *State v. Ramirez*, 535 N.W.2d 847, 849 (S.D. 1995). Because it is undisputed that a warrantless search and seizure occurred in this case, we must determine whether the officers' decision to stop and subsequently search Williams was reasonable under our established Fourth Amendment jurisprudence.

[¶12.] "[T]here is no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1879. We assess the totality of the circumstances to determine the constitutionality of the officer's conduct. *State v. Herren*, 2010 S.D. 101, ¶ 7, 792 N.W.2d 551, 554. "The factual basis needed to support an officer's reasonable suspicion is minimal." *State v. Meyer*, 2015 S.D. 64, ¶ 9, 868 N.W.2d 561, 565 (quoting *State v. Mohr*, 2013 S.D. 94, ¶ 14, 841 N.W.2d 440, 444). An officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. However, the stop must be something more than an "inchoate and unparticularized suspicion or hunch." *Id.* at 27, 88 S. Ct. at 1883.

[¶13.] When reviewing an officer's decision to make an investigative stop, we apply "a common-sense and non-technical approach to determining reasonable suspicion, one that deals with the practical considerations of everyday life." *Mohr*, 2013 S.D. 94, ¶ 14, 841 N.W.2d at 440 (quoting *State v. Sound Sleeper*, 2010 S.D.

---

(. . . continued)
    Because no such showing has been made here, we decline to engage in such an analysis.

71, ¶16, 787 N.W.2d 787, 791). To do so, we consider the officer's experiences when assessing the existence of reasonable suspicion. *Herren*, 2010 S.D. 101, ¶ 7, 792 N.W.2d at 554. An officer's training and expertise do not, however, override our objective standard when reviewing the stop. *State v. Hodges*, 2001 S.D. 93, ¶ 16, 631 N.W.2d 206, 210-11.

[¶14.] In its conclusions of law, the court determined that the officers had reasonable suspicion to stop Williams based on their observations and Officer Hahn's experience and familiarity with firearms. Relying on *Sleep*, the court also held that the officers were justified in performing a protective patdown search of Williams's person. 1999 S.D. 19, 590 N.W.2d 235. The court noted that "[p]olice need not be certain that a subject is armed; they must only have a reasonable belief that the individual is carrying a weapon and is potentially dangerous" to justify a further search. *Id.* ¶ 11, 590 N.W.2d 235, 239. Citing *Chase*, the court also considered the officers' response when faced with a threat to public safety. The court observed that the officers' "interest in detaining the suspect as quickly as possible may 'outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation' of the crime." *Chase*, 2018 S.D. 70, ¶ 13, 919 N.W.2d at 211 (quoting *United States v. Hensley*, 469 U.S. 221, 229, 105 S. Ct. 675, 680, 83 L. Ed. 2d 604 (1985)). The court held that based on the circumstances, Officer Hahn's "protective sweep was done in accordance with *Terry* and its progeny."

[¶15.] Williams's challenge of the court's holding revolves, in part, around his argument that the court erroneously applied our decisions in *Sleep* and *Chase*.

However, Williams offers only cursory factual distinctions between his case and *Sleep* and *Chase*. These distinctions do not impact the underlying Fourth Amendment principles implicated by *Terry* stops which may arise in a wide variety of factual situations.

[¶16.] The officers' decision to stop Williams, when viewed objectively and in light of the totality of the circumstances, demonstrates that reasonable suspicion existed in this case. Officer Hahn testified that he was aware that on occasion, altercations have started in downtown businesses and patrons take the arguments to some other location to finish their disputes. When he saw the laser, he had no way of knowing Williams's true intentions in drawing his weapon. Therefore, Officer Hahn stopped him, as he testified at the motions hearing, not out of idle curiosity, but to "prevent anything from happening, any sort of crime, assault, [or] robbery." This observation, when considered together with the time of the encounter (2:00 a.m.) and the location (near bars closing on Main Street during the Sturgis Motorcycle Rally), justified the stop.

[¶17.] Following Williams's detention, the officers were likewise justified in conducting a search to secure their safety and the safety of others because they knew Williams had at least one weapon on his person. *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. "[P]rotective patdown searches occurring as part of investigatory stops are justified when officers have grounds to believe that their safety or the safety of others may be compromised by concealed weapons." *Sleep*, 1999 S.D. 19, ¶ 9, 590 N.W.2d at 238; *see, e.g.*, *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 2136, 124 L. Ed. 2d 334 (1993). The officers' decision to continue to pat

Williams down following the removal of his handgun did not exceed the bounds of the *Terry* decision because, based on Williams's decision to draw his gun, the officers had a reasonable belief that Williams was potentially dangerous.[2] *See Sleep*, 1999 S.D. 19, ¶ 10, 590 N.W.2d at 239. Moreover, he appeared to be intoxicated and was in possession of a weapon in violation of the law which provided further justification for his detention.[3]

[¶18.] As a final matter, we take up Williams's challenge to the court's finding that he was "brandishing" a firearm as unsupported by the evidence. Citing a dictionary definition of brandishing as "to shake or wave (something, such as a weapon) menacingly," Williams argues that the court's findings constitute a "clearly erroneous description of the facts." *See Brandish*, Merriam-Webster Dictionary (Online ed. 2019).[4] In conclusion of law number 15, the circuit court rendered the following mix of findings and conclusions:

> On August 11, 2018, Officer Hahn was working as Foot Patrol on Main Street, in Sturgis, Meade County, South Dakota during the Rally. At 2:00 a.m. that morning, Rally attendees were generally leaving the downtown area. Defendant was walking down the street with a firearm with a sight laser attached to it, in a holster, on his side. Officer Hahn observed the activated laser sight, then Defendant's body movements. He believed,

---

2. The mere fact that Williams may have lawfully possessed the handgun does not remove it from the realm of potentially dangerous facts which may, in individual cases, support an officer's reasonable belief that his or her safety may be compromised.

3. *See* SDCL 22-14-7(3) (defining possession of a loaded firearm while intoxicated as a class 1 misdemeanor).

4. Likewise, Cambridge Dictionary defines "brandish" as the act of "wav[ing] something in the air in a threatening or excited way." *Brandish*, Cambridge Dictionary (Online ed. 2020).

> reasonably (and correctly, as it turned out), based on his training and experience, that he was observing someone remove and re-holster a weapon. These observations, with the officer's additional observations of possible impairment once contact was initiated, provided Officer Hahn with reasonable suspicion to stop defendant and determine if criminal activity was afoot. *Instead of arresting Defendant immediately for brandishing a firearm downtown during the Rally, the officers detained him.*

(Emphasis added.)

[¶19.]     The court's detailed findings of fact illustrate that it fully considered the nature of Williams's movements when characterizing his handling of his gun. More specifically, when explaining the events that transpired that evening, the circuit court stated:

> Officer Hahn observed the male slow down and reach over with his right hand and left hand to his right hip area. The male was approximately 100 yards or less from the officers. He was facing away from officers, but they could see a red laser coming from his person and shining onto the wall of the Oasis. Officer Hahn believed the red light was consistent with the laser sight attached to a gun.

[¶20.]     Neither this finding nor the court's chosen terminology in its conclusion of law leaves us "with a definite and firm conviction that a mistake has been made." *State v. Bonacker*, 2013 S.D. 3, ¶ 8, 825 N.W.2d 916, 919. Based on our review of the record, this description is entirely consistent with the testimony presented to the court considering the time of day and location of the incident. Even if use of the word "brandishing" was erroneous, it is of little consequence in light of our holding that the officers had reasonable suspicion to stop Williams under the totality of the circumstances. The circuit court did not err by denying Williams's motion to suppress.

#28938

[¶21.] GILBERTSON, Chief Justice, and JENSEN, SALTER, and DEVANEY, Justices, concur.