#27911-a-DG
**2017 S.D. 32**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

vs.

SHELLY D. STANLEY,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JEROME A. ECKRICH, III
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

GRANT FLYNN
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff
                                              and appellee.


TIMOTHY J. BARNAUD
Spearfish, South Dakota                          Attorney for defendant
                                              and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
APRIL 24, 2017
OPINION FILED 05/31/17

GILBERTSON, Chief Justice

[¶1.] Shelly D. Stanley appeals her conviction and sentence for possessing cocaine. She argues her Fourth Amendment rights were violated in a number of ways. She also challenges several of the circuit court's evidentiary rulings. Finally, she argues that several comments made during the State's closing argument were inappropriate and that the cumulative effect of these alleged errors denied her a fair trial. We affirm.

## Facts and Procedural History

[¶2.] On August 3, 2015, the Sturgis Motorcycle Rally was underway in Sturgis, South Dakota. Shortly before 1:00 a.m., Sturgis Police Officers Mike Varilek and Tom Strickland (collectively, "the Officers") received a report from another police officer that a male and female had entered a single-occupancy, portable toilet located in the middle of 2nd Street. Officer Varilek testified that such an event is extremely uncommon and that he had never seen it happen in seven years of working at the Sturgis Rally. Officer Varilek also testified that his primary objective at the Rally is public safety, and considering the alcohol and drug use that is common at the Rally, he wanted to be sure the female occupant was not being assaulted. Similarly, Officer Strickland testified that prostitution and human trafficking are concerns at the Rally. The Officers walked over to the portable toilet, which was a handicap-accessible unit located at the end of a row of five or six units. The toilet enclosure was vented around the top of the unit. The Officers testified that at the time, foot traffic in the area was minimal, and noise levels were low.

[¶3.]    After approaching the portable toilet,[1] the Officers overheard a conversation between the occupants, who were later identified as Stanley and Christopher Shuler.  Officer Varilek testified he heard the following exchange:

> [Shuler]:  You need to pack more in there.
>
> [Stanley]:  Can you believe we're in an outhouse [or porta-potty] in Sturgis getting ready to—
>
> [Shuler]:  Shh, you need to be quiet.[2]

The Officers also heard "a plastic bag rustling around as if somebody was digging in a sandwich bag."  Officer Varilek concluded, "[b]ased on [his] training and experience as a drug interdiction officer," that Shuler and Stanley were conducting a drug transaction.  Officer Varilek then knocked on the door and identified himself as a police officer.  About 30 seconds later, the door opened, and Shuler walked out.  Officer Varilek followed Shuler to question him.

[¶4.]    Officer Strickland stayed with Stanley.  He immediately observed Stanley seated on the toilet, with a plastic bag in her left hand.  Officer Strickland commanded Stanley to show him her hands, but she leaned forward and placed the bag in the waste receptacle below her.  After Stanley got up, Officer Strickland inspected the toilet's interior.  Sitting on top of the waste pile was a clear, plastic bag containing a white substance, and a red straw that had been cut to a length of about three or four inches.[3]  Officer Strickland did not observe any feces or other

---

1.    Officer Varilek testified he was "a foot or two" away from the portable toilet.  Officer Strickland testified he was about four to five inches away.

2.    Officer Strickland testified to a similar account.

3.    The Officers recognized this as a "snort tube."

waste on top of the bag, nor did he see any other bags in the toilet. After retrieving the straw and bag, Officer Strickland noticed a white, powdery substance on the inside of the straw, which led him to conclude it had been used to snort some sort of drug like cocaine or methamphetamine. Subsequent analysis confirmed the bag contained cocaine.

[¶5.] The Officers arrested Stanley and Shuler. After the arrest, the Officers asked Stanley to provide a urine sample, but she refused. The Officers did not subsequently seek a warrant. Stanley was later indicted on one count of possessing a controlled substance in violation of SDCL 22-42-5. Shuler was not indicted.

[¶6.] Prior to trial, the circuit court resolved several evidentiary issues. The court decided that the State could use Stanley's refusal to provide a urine sample against her as evidence of consciousness of guilt. However, the court decided that Stanley would not be able to use the fact that the Officers did not seek a warrant for her urine as evidence to rebut the State's use of her refusal to provide a urine sample. The court also determined that the Officers could testify regarding the conversation they overheard coming from inside the portable toilet.

[¶7.] Stanley's one-day trial occurred on March 2, 2016. After the close of the State's evidence, Stanley made a motion for judgment of acquittal, which the circuit court denied. She also made several objections throughout the course of the trial that are relevant to this appeal. During Stanley's closing argument, her attorney commented on the State's failure to call Shuler as a witness at trial. During the State's closing, the prosecutor remarked that Stanley had the same

power to subpoena witnesses. And after Stanley's attorney commented in closing that the police acted illegally, the prosecutor said the opposite in her closing. Stanley objected in both instances and was overruled.

[¶8.]    At the conclusion of the trial, the jury returned a guilty verdict. On June 13, 2016, the court sentenced Stanley to imprisonment for five years but fully suspended the sentence on the condition that Stanley serve 180 days in prison and undergo five years of probation. Stanley appeals her conviction and sentence, raising six issues:

1. Whether the evidence obtained by the Officers should have been suppressed.

2. Whether the circuit court erred by permitting Officer Varilek to testify that Stanley refused to provide a urine sample after her arrest.

3. Whether the circuit court erred by refusing to permit Stanley to offer evidence that the State did not obtain a warrant for a urine sample.

4. Whether Officer Varilek's testimony regarding Shuler's statements was inadmissible hearsay.

5. Whether the prosecutor committed misconduct during the State's closing argument.

6. Whether the cumulative effect of the court's alleged errors deprived Stanley of a fair trial.

## Analysis and Decision

[¶9.]    *1.    Whether the evidence obtained by the Officers should have been suppressed.*

[¶10.]    Stanley argues the evidence gathered by the Officers should have been suppressed because according to Stanley, the Officers violated the Fourth Amendment in two ways. First, she contends that she had an expectation of privacy inside the portable toilet and that the Officers' aural observation of her conversation

with Shuler amounted to a warrantless search. According to Stanley, the Officers "had no suspicion that criminal activity was taking place." Second, she contends that the Officers had no reason to interact with or detain her. We disagree on both counts.

[¶11.] The State may not unreasonably search or seize an individual. U.S. Const. amend. IV; S.D. Const. art. VI, § 11. Under the Fourth Amendment, "the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure[.]" *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968). Unless an exception applies, a search is unreasonable when the government trespasses into an area protected by the Fourth Amendment without a warrant. *United States v. Jones*, 565 U.S. 400, 406, 132 S. Ct. 945, 950, 181 L. Ed. 2d 911 (2012) ("[F]or most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates."). Even when a trespass does not occur, a warrantless search is unreasonable if: (1) "the individual has shown that 'he seeks to preserve something as private[,]'" and (2) "viewed objectively, [the individual's expectation] is 'justifiable' under the circumstances." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580, 61 L. Ed. 2d 220 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 351, 353, 88 S. Ct. 507, 511-12, 19 L. Ed. 2d 576 (1967)).

[¶12.] Although Stanley states the legal standard on this issue, she does not explicitly argue she had a subjective expectation of privacy in the portable toilet. Stanley was not alone in the single-occupancy, portable toilet, which was located on

a public street, adjacent to at least one other portable toilet, during a well-attended event. The portable-toilet enclosure was vented around the top, allowing air—and sound—to pass freely between the interior of the portable toilet and the outside world. Moreover, the Officers testified that Stanley and Shuler spoke at a normal, conversational volume. So while Stanley and Shuler's decision to lock themselves in the portable toilet exhibits at least some intent to conceal their activities from *visual* observation, they did little to prevent their conversation from being overheard by any passing member of the public. "[T]he police cannot reasonably be expected to avert their eyes [or ears] from evidence of criminal activity that could have been observed by any member of the public." *California v. Greenwood*, 486 U.S. 35, 41, 108 S. Ct. 1625, 1629, 100 L. Ed. 2d 30 (1988); *see also Arizona v. Hicks*, 480 U.S. 321, 328, 107 S. Ct. 1149, 1154, 94 L. Ed. 2d 347 (1987) (holding observation of that which is already observable—"without disturbing it—is not a 'search' for Fourth Amendment purposes"); *Katz*, 389 U.S. at 351, 88 S. Ct. at 511 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). Therefore, Stanley has not demonstrated a subjective expectation of privacy relevant to the observation she complains of. Even if she had, she cites no authority to support her conclusion that such a subjective expectation is objectively reasonable; therefore, such argument is waived. *Veith v. O'Brien*, 2007 S.D. 88, ¶ 50, 739 N.W.2d 15, 29 (citing SDCL 15-26A-60(6)) (holding failure to cite supporting authority waives argument).

[¶13.]     The question then becomes whether the Officers had cause to command Stanley and Shuler to open the door of the portable toilet. "The Fourth

Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, ___ U.S. ___, ___, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981)). "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612 (1972). Thus, the totality of the circumstances determines whether such an officer has a particularized and objective basis to initiate an investigative stop. *Navarette*, ___ U.S. at ___, 134 S. Ct. at 1687. "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Id.* (citations omitted) (first quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; and then quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989)).

[¶14.]      Under the totality of the circumstances, the Officers had a particularized and objective basis to investigate Stanley and Shuler's activities. The Officers knew that two individuals, one male and one female, entered a single-occupancy, portable toilet. This event occurred at 1:00 a.m. during the Sturgis Motorcycle Rally—an event that according to the Officers, suffers from drug, prostitution, and human-trafficking problems. Given these concerns, as well as the

Officers' concern that an assault could occur, their intermediate response of simply walking up to the portable toilet was a measured reaction. Once there, the Officers overheard conversation and the sound of a plastic bag. Based on their training—and in particular, Officer Varilek's experience in drug interdiction—the Officers concluded a drug transaction was in progress. Only then did the Officers initiate contact and ask Stanley and Shuler to open the door. Considering the facts known to the Officers, the context in which those facts occurred, and the Officers' training and experience, we conclude the Officers had a particularized and objective basis to suspect criminal activity was occurring. Once the door was open, Officer Strickland observed Stanley abandon the bag she held by dropping it into the waste receptacle. Thus, the Fourth Amendment does not prohibit his retrieval of the straw and bag, *see Greenwood*, 486 U.S. at 37, 108 S. Ct. at 1627 (holding Fourth Amendment does not require warrant for search and seizure of abandoned garbage), and the circuit court correctly denied Stanley's motion to suppress evidence.

[¶15.]       **2.       *Whether the circuit court erred by permitting Officer Varilek to testify that Stanley refused to provide a urine sample after her arrest.***

[¶16.]       Next, Stanley argues that Officer Varilek's testimony regarding her refusal to provide a urine sample violates the Fourth Amendment. Stanley principally relies on *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).[4] In that case, the United States Supreme Court held "that in drunk-driving investigations, the natural dissipation of alcohol in the

---

4.    She also cites to our discussion of *McNeely* in *State v. Fierro*, 2014 S.D. 62, 853 N.W.2d 235.

bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id.* at \_\_\_, 133 S. Ct. at 1568. Because Stanley concludes the Officers could not have compelled her to give a urine sample without a warrant, she reasons that using her refusal against her at trial violates the Fourth Amendment. She also argues this error was compounded when the court read Instruction 23, which informed the jury that it could consider Stanley's refusal as evidence of consciousness of guilt.[5]

[¶17.] Stanley's reliance on *McNeely* is misconceived in several respects. The Fourth Amendment protects against unreasonable *searches* and *seizures*. Stanley has not even attempted to explain how *asking* an arrestee to provide a urine sample is either a search or a seizure. And *McNeely* recognized—without doubt or criticism—that "most States allow the motorist's refusal to take a [blood alcohol content] test to be used as evidence against [her] in a subsequent criminal prosecution." *Id.* at \_\_\_, 133 S. Ct. at 1566 (plurality opinion) (citing *South Dakota*

---

5.    Jury Instruction 23 stated:

> Evidence has been introduced that the Defendant refused to submit to a test of Defendant's urine to determine the existence of any controlled drug or substance in Defendant's urine. The refusal to submit is not sufficient, by itself, to establish guilt of the Defendant. It is a fact which if proved may be considered by you in light of all other proved facts in deciding whether the Defendant is guilty or not guilty of the crime of Possession of a Controlled Substance. The weight, if any, to which the refusal is entitled and whether the conduct shows a consciousness of guilt are matters for your determination.

On appeal, Stanley presents her objections to Officer Varilek's testimony and Instruction 23 as separate arguments. However, both arguments are based on Stanley's Fourth Amendment theory and, therefore, turn on the same analysis.

*v. Neville*, 459 U.S. 553, 554, 563-64, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983) (holding that the use of such an adverse inference does not violate the Fifth Amendment right against self-incrimination)); *accord Birchfield v. North Dakota*, ___ U.S. ___, ___, 136 S. Ct. 2160, 2185, 195 L. Ed. 2d 560 (2016) ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply."). In South Dakota, the same is true for drug offenses. *State v. Mattson*, 2005 S.D. 71, ¶ 45, 698 N.W.2d 538, 552 ("[T]he refusal by a defendant of an officer's legitimate request to take a urinalysis . . . is admissible at trial . . . even if the defendant is not warned that [her] refusal will be admissible at trial.").

[¶18.]        Even if *McNeely* applies, Stanley's analysis is incomplete. *McNeely* did not hold that the exigent-circumstances exception to the warrant requirement can never validate a warrantless search. *McNeely* simply held "that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency *in every case* sufficient to justify conducting a blood test without a warrant." ___ U.S. at ___, 133 S. Ct. at 1568 (emphasis added). The necessary implication of this holding is that in *some* drunk-driving investigations, the natural dissipation of alcohol or drugs in the bloodstream *does* constitute an exigency sufficient to justify conducting a blood test without a warrant. Stanley provides no analysis on the question whether the circumstances of this case were

sufficiently exigent to justify a warrantless search (that did not even occur).

Therefore, Stanley's argument is wholly unsupported by *McNeely*.[6]

[¶19.]       Stanley's argument falls short of establishing that a search occurred,

let alone that such a search would have violated the Fourth Amendment. The

circuit court did not err by permitting Officer Varilek's testimony, nor did it err by

issuing Instruction 23.

[¶20.]       **3.       *Whether the circuit court erred by refusing to permit Stanley to offer evidence that the State did not obtain a warrant for a urine sample.***

[¶21.]       Next, Stanley argues that because the circuit court permitted Officer

Varilek's testimony, it should have also permitted testimony that the Officers did

not seek a warrant for a urine sample. "This Court reviews a decision to admit or

deny evidence under the abuse of discretion standard." *Donat v. Johnson*, 2015 S.D.

16, ¶ 24, 862 N.W.2d 122, 130 (quoting *Ferebee v. Hobart*, 2009 S.D. 102, ¶ 12,

776 N.W.2d 58, 62). The only reason advanced by Stanley for wanting to introduce

the Officers' failure to seek a warrant is that according to Stanley, they were

required to do so under *McNeely*. Like this Court, the circuit court rejected

Stanley's *McNeely* argument. Stanley has not advanced any other argument to

establish the relevance of her desired evidence.

[¶22.]       Even if she did, in order to be admissible, evidence must be relevant.

SDCL 19-19-402. And even then, "[t]he court may exclude relevant evidence if its

probative value is substantially outweighed by a danger of . . . confusing the issues

---

6.       Stanley's argument is really a Fifth Amendment, self-incrimination
argument. The United States Supreme Court rejected the same argument in
*Neville*, 459 U.S. at 554, 103 S. Ct. at 917-18.

[or] misleading the jury[.]" SDCL 19-19-403. The circuit court concluded that Stanley's desired evidence would confuse and mislead the jury into deciding a legal question as a factual matter—i.e., whether the Officers were required to obtain a warrant. Under the circumstances, and given our rejection of Stanley's *McNeely* theory, we cannot say the circuit court's decision was "a choice outside the range of permissible choices[.]" *State v. Kvasnicka*, 2016 S.D. 2, ¶ 7, 873 N.W.2d 705, 708 (quoting *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850). Therefore, the court did not abuse its discretion in denying Stanley's desired evidence.

[¶23.]    **4.    *Whether Officer Varilek's testimony regarding Shuler's statements was inadmissible hearsay.***

[¶24.]    Next, Stanley argues that the circuit court "incorrectly allowed the State to introduce inculpatory hearsay statements from . . . Shuler through Officer Varilek over the objection of defense counsel." Specifically, Officer Varilek testified that Shuler said, "You need to pack more in there" and "Shh, you need to be quiet." Stanley objected, arguing only that such statements are hearsay. On appeal, Stanley also contends that Officer Varilek's testimony was a violation of her Sixth Amendment right to confront her accuser because the State did not call Shuler as a witness at trial. The State responds that Officer Varilek's testimony was not hearsay. It also contends that Officer Varilek's testimony did not violate the Sixth Amendment because Shuler's statements did not facially incriminate Stanley.

[¶25.]    We agree with the State that Officer Varilek's testimony regarding Shuler's statements was not hearsay. The word *hearsay* is statutorily defined as "a statement that: (1) [t]he declarant does not make while testifying at the current trial or hearing; and (2) [a] party offers in evidence to prove the truth of the matter

-12-

asserted in the statement." SDCL 19-19-801(c). The State did not introduce Shuler's statements in order to prove that Stanley did, in fact, "need to pack more in there" or that she "need[ed] to be quiet." Instead, the purpose of Officer Varilek's testimony about the conversation he heard in the portable toilet was to give context for why he suspected the occupants were engaged in illegal activity. Thus, Officer Varilek's testimony was not hearsay because Shuler's statements were not introduced to prove the truth of Shuler's assertions.

[¶26.] Next, Stanley argues on appeal that Officer Varilek's testimony regarding Shuler's statements violates her Sixth Amendment right of confrontation. But as noted above, when Stanley objected to Officer Varilek's testimony, she did so only on the basis that in her view, the statements were hearsay. Stanley does not direct us to any portion of the record indicating that she raised this issue before the circuit court, nor have we been able to locate such an argument during our own review. "This Court will not address arguments that are raised for the first time on appeal." *Legrand v. Weber*, 2014 S.D. 71, ¶ 26, 855 N.W.2d 121, 129. Therefore, Stanley's Sixth Amendment argument is waived. *Id.*

[¶27.] Even if Stanley had raised this argument before the circuit court, we do not agree. The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against [her.]" U.S. Const. amend. VI.[7] Stanley principally relies on *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620,

---

7. The scope of the Confrontation Clause is not coextensive with that of the rules of evidence. *California v. Green*, 399 U.S. 149, 155-56, 90 S. Ct. 1930, 1933-34, 26 L. Ed. 2d 489 (1970). Therefore, our determination that the statements at issue were not hearsay does not resolve Stanley's Sixth Amendment argument.

20 L. Ed. 2d 476 (1968).[8] In that case, the United States Supreme Court "held that a defendant is deprived of [her] Sixth Amendment right of confrontation when the *facially incriminating* confession of a nontestifying *codefendant* is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207, 107 S. Ct. 1702, 1707, 95 L. Ed. 2d 176 (1987) (emphasis added) (discussing *Bruton*, 391 U.S. at 135-36, 88 S. Ct. at 1627-28). As the emphasized portions of this quotation indicate, the present case is notably different than *Bruton*—Shuler and Stanley were not codefendants.

[¶28.]    Additionally, Shuler's statements—i.e., "You need to pack more in there" and "Shh, you need to be quiet"—are not *facially* incriminating. In *Bruton*, the hearsay statement at issue consisted of a codefendant's oral confession that he and the defendant committed armed robbery. 391 U.S. at 124, 88 S. Ct. at 1621. Thus, on its face, the statement asserted that the defendant committed the crime for which he was prosecuted. Similarly, the hearsay statement at issue in *Marsh* was also a codefendant's confession. However, in contrast to *Bruton*, the confession was redacted to remove explicit reference to the defendant. *Marsh*, 481 U.S. at 203-04, 107 S. Ct. at 1705. Thus, "the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial[.]" *Id.* at 208, 107 S. Ct. at 1707. This "important distinction" removed the statement from the *Bruton* rule. *Id.* Likewise, the statements at issue in the present case are not

---

8.    She also cites to our discussion of *Bruton* in *State v. Fool Bull*, 2009 S.D. 36, 766 N.W.2d 159.

-14-

incriminating when viewed alone—they became incriminating only when linked with other evidence introduced at trial. Under *Marsh*, therefore, these statements are not *facially* incriminating.

[¶29.]     Moreover, unlike Officer Varilek's testimony, the statement at issue in *Bruton* was inadmissible hearsay. *Tennessee v. Street*, 471 U.S. 409, 413, 105 S. Ct. 2078, 2081, 85 L. Ed. 2d 425 (1985) (discussing *Bruton*, 391 U.S. at 135-36, 88 S. Ct. at 1627-28). The analysis is different when the State introduces a statement for a "legitimate, nonhearsay purpose[.]" *Id.* at 417, 105 S. Ct. at 2083. As explained above, the statements in the present case were offered for a legitimate, nonhearsay purpose—establishing the basis for the Officers' suspicion that drug activity was occurring in the portable toilet and their subsequent decision to make contact with Stanley and Shuler. "The jury's attention was directed to this distinctive and limited purpose by the prosecutor's questions . . . ." *Id.* And because the statements at issue are not facially incriminating, there was little risk (if any) that the jury could have used Shuler's statements to infer Stanley was guilty. *See id.* at 414-15, 105 S. Ct. at 2082. Therefore, even if Stanley had raised this argument before the circuit court, no Sixth Amendment violation occurred.

[¶30.]     **5.     *Whether the prosecutor committed misconduct during the State's closing argument.***

[¶31.]     Next, Stanley argues the prosecutor committed misconduct in two ways. First, Stanley contends that during the State's closing argument, the prosecutor improperly commented that "Law enforcement acted lawfully on August 3rd of 2015. That's been decided and that's been determined." According to Stanley, this comment referenced the circuit court's earlier ruling on a suppression

motion and violated the circuit court's pretrial order against mentioning that ruling at trial. Assuming without deciding that this comment amounts to misconduct, we have previously indicated that prosecutorial misconduct can be mitigated when "the [S]tate's actions [are] in direct response to [a defendant's] own closing argument" or when the circuit court acts "to curtail any improper inference the jury may have taken from the closing arguments." *State v. Davi*, 504 N.W.2d 844, 856 (S.D. 1993). The State's commentary seems to be a response to statements made during Stanley's closing argument: "This is a case . . . about police overbreaching [sic] conduct by law enforcement, it shows complete disregard and actually disdained [sic] for the privacy and constitutional rights that this country affords its citizens." Additionally, after Stanley objected, the court interrupted the State's argument by calling both attorneys to the bench, and the prosecutor then changed subjects. And when closing arguments concluded, the court advised the jury to reread the jury instructions—specifically, the instruction on comments made by the attorneys. Under these facts, we do not think the prosecutor's comments rise to the level of reversible error.

[¶32.] Stanley also faults the prosecutor for stating during closing argument that Stanley "has the ability to call witnesses as well. So [she has] that full ability to do that here today." According to Stanley, these comments were an improper attempt to shift the burden to her. Contrary to Stanley's contention, "[w]e have consistently approved of statements alluding to the fact that the accused has failed to produce other witnesses or evidence." *State v. Rosales*, 302 N.W.2d 804, 806 (S.D. 1981). Moreover, toward the end of Stanley's closing argument, her attorney

said: "And where's Mr. [Shuler]? . . . [The State] failed to produce the accusing witness, Christopher Shuler." The prosecutor then made the objected-to statement at the beginning of the State's rebuttal. After Stanley objected, the court said: "Well, the way you framed it, I think [the State's comment is] fair." We review prosecutor-misconduct claims for an abuse of discretion. *State v. Bariteau*, 2016 S.D. 57, ¶ 23, 884 N.W.2d 169, 177. We do not think the court's conclusion is "outside the range of permissible choices." *Kvasnicka*, 2016 S.D. 2, ¶ 7, 873 N.W.2d at 708 (quoting *Gartner*, 2014 S.D. 74, ¶ 7, 855 N.W.2d at 850).

[¶33.]     *6.     Whether the cumulative effect of the court's alleged errors deprived Stanley of a fair trial.*

[¶34.]     Because we conclude the circuit court did not err, this argument is meritless.

## Conclusion

[¶35.]     Officers Varilek and Strickland did not violate the Fourth Amendment when they approached the portable toilet, overheard Stanley and Shuler's conversation, or retrieved the straw and bag containing cocaine. Therefore, the circuit court correctly denied Stanley's motion to suppress the evidence. The circuit court also correctly concluded that the Fourth Amendment does not prohibit the State from using a criminal defendant's refusal to voluntarily provide a urine sample as evidence of consciousness of guilt at trial. The circuit court did not abuse its discretion in refusing to permit Stanley to present evidence that the Officers did not obtain a warrant for her urine. Shuler's statements, introduced through Officer Varilek's testimony, were not hearsay. Finally, the prosecutor's comments during the State's closing argument did not deny Stanley a fair trial.

[¶36.]     We affirm.

[¶37.]     ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.