#28353-a-SRJ
**2018 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,  Plaintiff and Appellee,

v.

KELSO BOWERS,  Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN L. BROWN
Judge

\* \* \* \*

JUSTIN L. BELL of
May, Adam, Gerdes & Thompson LLP  Attorneys for defendant and
Pierre, South Dakota  appellant.

MARTY J. JACKLEY
Attorney General

GRANT FLYNN
Assistant Attorney General  Attorneys for plaintiff and
Pierre, South Dakota  appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 19, 2018
OPINION FILED **06/27/18**

#28353

JENSEN, Justice

[¶1.]    Kelso Bowers appeals from an order entering a suspended imposition of sentence after he was found guilty of driving under the influence of alcohol following a trial to the court. Bowers claims the circuit court erred in denying his motion to suppress evidence. We affirm.

## Background

[¶2.]    On July 27, 2016, Pierre Police Officer Lee Coppersmith observed a red pickup leaving Bob's Lounge, a bar in Pierre, around 1:42 a.m. Officer Coppersmith followed the vehicle along Dakota Avenue and testified that he observed the pickup cross the centerline, traveling to a point where half of the vehicle was in the wrong lane of traffic. Officer Coppersmith continued to follow the pickup over the Missouri River Bridge between Pierre and Fort Pierre. He testified that he observed the pickup swerve multiple times while on the bridge, at one point coming within inches of a concrete barrier. After crossing the bridge, Officer Coppersmith saw the pickup swerve toward the center median, narrowly miss it, and swerve back toward the middle of the driving lane.

[¶3.]    Officer Coppersmith engaged his lights and pulled the vehicle over. Upon approaching the pickup, he detected the smell of alcohol emanating from the driver, Bowers. Officer Coppersmith observed that Bowers was slurring his speech and had glassy, bloodshot eyes. Officer Coppersmith asked Bowers to come back to the patrol vehicle. After Bowers refused field sobriety tests, Officer Coppersmith placed him under arrest for driving under the influence and transported him to jail.

[¶4.] Officer Coppersmith drafted an electronic affidavit for a search warrant seeking to obtain a blood sample from Bowers. He attached his electronic signature to the affidavit, emailed it to a Sixth Judicial Circuit magistrate judge, and placed a phone call to the judge. Over the phone, the judge instructed Officer Coppersmith to swear under oath that the contents of the affidavit were true and correct. The judge electronically signed the jurat on the affidavit, affirming that the affidavit had been "subscribed and sworn to" before the magistrate. The magistrate judge then signed the search warrant and emailed the affidavit and warrant back to Officer Coppersmith. After receiving the warrant, a medical professional drew a blood sample from Bowers. The sample was later transported to the State Health Lab, which found Bowers's blood alcohol content to be 0.289%.

[¶5.] Bowers was charged by information with alternate counts of driving under the influence of alcohol in violation of SDCL 32-23-1(1) or SDCL 32-23-1(2). Bowers filed a motion to suppress all evidence claiming that Officer Coppersmith lacked reasonable suspicion to initiate the traffic stop and that the search warrant for the blood sample was invalid under South Dakota law. The circuit court issued a memorandum opinion denying the motion to suppress. This Court denied a petition for intermediate appeal by Bowers. The case was then tried on stipulated facts and Bowers was found guilty. The circuit court entered an order suspending imposition of sentence.

[¶6.] Bowers appeals, arguing that Officer Coppersmith lacked reasonable suspicion to initiate an investigatory traffic stop and that the warrant obtained for the blood draw violated the Warrants Clause of the South Dakota Constitution.

## Analysis

*1.     Whether Officer Coppersmith lacked reasonable suspicion to initiate an investigatory traffic stop.*

[¶7.]     Bowers first claims that Officer Coppersmith's testimony was "highly suspect" because Officer Coppersmith admitted he was five blocks away when he observed the vehicle cross the center line and because the police video recording did not start until after Officer Coppersmith claims to have observed this violation. Bowers also claims the police video recording of the traffic stop conflicts with Officer Coppersmith's testimony because it does not show any traffic violations. Bowers asserts the video shows he was a couple of feet away from the barrier, and thus he could not have crossed the white line. Bowers also points to Officer Coppersmith's testimony that "the video is not as good as my own eyes," and "from what I observed, compared to the video," the vehicle was "two to three inches . . . from the median." Bowers claims this demonstrates that Officer Coppersmith recognized that his testimony was inconsistent with events shown on the patrol vehicle camera. Bowers also presented testimony from the passenger in his vehicle who testified that Bowers did not cross the centerline and was not swerving within the lane of traffic.

[¶8.]     The State responds that the circuit court is the finder of fact and sole judge of the credibility of a witness. The State argues that the circuit court's findings of fact supporting reasonable suspicion were not clearly erroneous. The State claims the circuit court properly relied on both Officer Coppersmith's testimony and the video evidence.

[¶9.] "We review the denial of [a] motion to suppress based on the alleged violation of a constitutionally protected right as a question of law by applying the de novo standard of review." *State v. Doap Deng Chuol*, 2014 S.D. 33, ¶ 19, 849 N.W.2d 255, 261. "[W]e review findings of fact under the clearly erroneous standard." *Id.* (quoting *State v. Lamont*, 2001 S.D. 92, ¶ 12, 631 N.W.2d 603, 607). "A finding is clearly erroneous only if, after reviewing the evidence in its entirety, 'we are left with a definite and firm conviction that a mistake was made.'" *State v. Ballard*, 2000 S.D. 134, ¶ 9, 617 N.W.2d 837, 840 (quoting *State v. Almond*, 511 N.W.2d 572, 574 (S.D. 1994)). Once the facts have been correctly ascertained, we review the circuit court's application of those facts de novo. *State v. Babcock*, 2006 S.D. 59, ¶ 12, 718 N.W.2d 624, 628. As such, determinations of reasonable suspicion are also reviewed de novo on appeal. *Ballard*, 2000 S.D. 134, ¶ 9, 617 N.W.2d at 840.

[¶10.] "The Fourth Amendment's prohibition against unreasonable searches and seizures applies when a car is stopped by law enforcement." *State v. Burkett*, 2014 S.D. 38, ¶ 44, 849 N.W.2d 624, 635 (quoting *State v. Rademaker*, 2012 S.D. 28, ¶ 8, 813 N.W.2d 174, 176). A police officer "may stop a car, without obtaining a warrant, if there is reasonable suspicion that criminal activity may be afoot." *Id.* ¶ 45, 849 N.W.2d at 635 (quoting *Rademaker*, 2012 S.D. 28, ¶ 9, 813 N.W.2d at 176). "Reasonable suspicion to stop must be based on specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* (quoting *State v. Herren*, 2010 S.D. 101, ¶ 8, 792 N.W.2d 551, 554).

[¶11.]     This Court looks to the "totality of the circumstances of each case to see whether the detaining officer [had] a particularized and objective basis for suspecting legal wrongdoing." *State v. Olson*, 2016 S.D. 25, ¶ 5, 877 N.W.2d 593, 595 (quoting *Herren*, 2010 S.D. 101, ¶ 7, 792 N.W.2d at 554). "The stop may not be the product of mere whim, caprice or idle curiosity." *Id.* (quoting *Herren*, 2010 S.D. 101, ¶ 8, 792 N.W.2d at 554). However, a police officer may "draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id.* (quoting *Herren*, 2010 S.D. 101, ¶ 7, 792 N.W.2d at 554).

[¶12.]     The circuit court found that: (1) the stop of Bowers was initiated by a trained law enforcement officer; (2) Officer Coppersmith observed the vehicle leaving a bar early in the morning; (3) Officer Coppersmith observed the vehicle cross the center line of the roadway; (4) the possible crossing of the center line prompted Officer Coppersmith to further monitor the vehicle; and (5) Officer Coppersmith observed the vehicle weaving in its lane of travel and nearly making contact with a concrete barrier. The circuit court discounted the conflicting testimony from the passenger because of bias and the passenger's limited ability to observe the vehicle's movements. The court's findings and credibility determinations are supported by the evidence and are free of clear error.

[¶13.]     The circuit court's finding that Officer Coppersmith observed the vehicle cross the center line provided the officer reasonable suspicion to initiate the stop. *See State v. Starkey*, 2011 S.D. 92, ¶ 6, 807 N.W.2d 125, 128; *State v. Akuba*, 2004 S.D. 94, ¶ 16, 686 N.W.2d 406, 414. Additionally, the circuit court's findings

that Officer Coppersmith observed the vehicle leaving the parking lot of a bar at 1:30 in the morning, weaving in the lane of traffic, and nearly making contact with a concrete barrier provided reasonable suspicion to believe the driver may have been driving under the influence at the time. *See e.g. Rademaker*, 2012 S.D. 28, ¶ 13, 813 N.W.2d at 177 (considering time of day (1 a.m.) coupled with a traffic violation as relevant to finding reasonable suspicion); *State v. Scholl*, 2004 S.D. 85, ¶ 14, 684 N.W.2d 83, 88 (recognizing that the likelihood of alcohol consumption for someone leaving a bar is obviously enhanced); *State v. Anderson*, 331 N.W.2d 568, 570 (S.D. 1983) (identifying an experienced police officer's observations of a defendant's driving skills in early morning hours as relevant to reasonable suspicion). The circuit court did not err in denying the motion to suppress as to reasonable suspicion.

> 2. *Whether the warrant obtained for Bowers's blood draw violated the Warrants Clause of the South Dakota Constitution.*

[¶14.] Bowers claims the procedures taken to procure the search warrant for his blood sample violated the Warrants Clause of the South Dakota Constitution. He argues the warrant was constitutionally deficient because the affidavit in support of the warrant was improper. Bowers claims that Officer Coppersmith's failure to physically sign the affidavit in the presence of the magistrate judge invalidates it. Bowers also argues that the affidavit must be sworn to in person before the officer authorized to administer the oath. Finally, Bowers argues the affidavit and search warrant were deficient because the phone call between the magistrate judge and Officer Coppersmith was not recorded, transcribed, and certified by the magistrate judge as required by statute.

[¶15.]     The State claims the procedure used here satisfied the Warrants Clause of the South Dakota Constitution because it complied with the requirements for an electronic affidavit and warrant pursuant to SDCL 23A-35-4.2.  The State argues that this Court should employ the "highly deferential standard" we use "when reviewing challenges to the sufficiency of search warrants."  *Babcock*, 2006 S.D. 59, ¶ 11, 718 N.W.2d at 628.  "A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."  *Id.* (quoting *State v. Jackson*, 2000 S.D. 113, ¶ 9, 616 N.W.2d 412, 416).  When reviewing the sufficiency of the facts in the affidavit, this Court examines the totality of the circumstances surrounding the warrant "to decide if there was at least a 'substantial basis' for *the issuing judge's finding of probable cause*."  *Id.* (emphasis added).

[¶16.]     The deferential standard of review promoted by the State is not applicable here.  The issue is not whether the facts set forth in the affidavit established probable cause, but whether the procedures employed to procure the search warrant comply with the South Dakota Constitution and statutes.  "Issues of statutory and constitutional interpretation are questions of law."  *Expungement of Oliver*, 2012 S.D. 9, ¶ 5, 810 N.W.2d 350, 351.  "We review the interpretation and application of each de novo."  *Id.*  "In conducting statutory interpretation, 'we give words their plain meaning and effect, and read statutes as a whole.'"  *Id.* ¶ 6, 810 N.W.2d at 352 (quoting *State v. Miranda*, 2009 S.D. 105, ¶ 14, 776 N.W.2d 77, 81).

[¶17.]     The Warrants Clause in Article VI, § 11, of the South Dakota Constitution ensures:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrant shall issue *but upon probable cause supported by affidavit*, particularly describing the place to be searched and the person or thing to be seized.

The Warrants Clause requires a warrant to be supported by an affidavit showing probable cause. This language differs slightly from the United States Constitution which provides "no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). The Warrants Clause does not define the term *affidavit* or otherwise prescribe the necessary requirements for an affidavit used to support probable cause for a warrant, so we turn to the South Dakota statutes to resolve this question.

[¶18.]     SDCL chapter 23A-35 sets forth the general requirements and procedures to obtain a search warrant. Consistent with the Warrants Clause, SDCL 23A-35-4 provides:

> A warrant shall be issued only on evidence set forth in an affidavit or affidavits presented to a committing magistrate, which establishes the grounds for issuing the warrant. If the committing magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched. . . .  Before ruling on a request for a warrant the committing magistrate may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce. Such proceeding shall be taken down by a court reporter, stenographer, or recording equipment and made part of the affidavit.

[¶19.]    SDCL 23A-35-4.2 allows for the electronic transmission and receipt of an affidavit, as well as the issuance of a search warrant by an electronic copy:

> A committing magistrate may, by means of electronic transmission, *receive an affidavit* in support of the issuance of a search warrant and may issue a search warrant by the same method.  All applicable procedural and statutory requirements for the issuance of a warrant shall be met.  For all procedural and statutory purposes, the electronic document shall have the same force and effect as the original. . . .
>
> The officer executing the warrant shall receive proof that the committing magistrate has signed the warrant before the warrant is executed.  Proof that the committing magistrate has signed the warrant may consist of receipt of the electronic copy of the warrant.

(Emphasis added.)

[¶20.]    SDCL 23A-35-5 authorizes the use of "sworn oral testimony" to support a search warrant.  Often referred to as a "telephonic warrant," the statute does not require the affiant to appear personally to be sworn under oath before the magistrate.  Rather, oral testimony may be received by telephone or other means.  However, the oral testimony must be recorded, transcribed, and certified by the magistrate issuing the warrant.  The statute deems the transcribed testimony to be an affidavit for the purpose of SDCL 23A-35-4.

[¶21.]    SDCL 19-3-2 defines an affidavit as "a written declaration under oath made without notice to the adverse party."  SDCL 19-4-1 provides that "[a]n affidavit may be made in or out of this state before any person authorized to administer an oath."  SDCL 18-3-1(1) authorizes "Supreme Court justices, circuit judges, magistrates, notaries public, the clerk and deputy clerk of the Supreme Court, and clerks and deputy clerks of the circuit court, within the state, and federal judges, and federal magistrates" to administer oaths.

[¶22.] The above statutes do not address whether the written declarations in the affidavit must be signed by the declarant, or whether the oath must be administered to the officer in person. However, SDCL 18-1-11 prohibits a notary public from administering an oath that is not in person, stating it is a Class 2 misdemeanor "for any notary public to affix his official signature to documents when the parties have not *appeared* before him." (Emphasis added.) There is no similar prohibition in the statutes for oaths administered by judicial officers. Moreover, there is nothing in the text of the Warrants Clause or SDCL 23A-35-4 requiring that the affiant personally appear to sign the affidavit and be sworn by the issuing magistrate.[1] We also note that SDCL 23A-35-4 provides that "before ruling on a request for a warrant the committing magistrate may require the affiant to appear personally." Additionally, the telephonic warrant statute in SDCL 23A-35-5 provides that "when circumstances make it reasonable to do so," a search warrant may be issued upon "sworn oral testimony" over the phone to the "committing magistrate." The authorization to use sworn oral testimony over the phone contemplates that the oath by the issuing magistrate is not administered in person. There seems to be little reason to distinguish between an oath that is not administered in person for oral testimony and the same oath given to support affidavit testimony. Based upon these statutes, and in the absence of any provision

---

1. The South Carolina Supreme Court addressed this issue in the absence of such specific language in a warrant statute. The court approved of an affidavit prepared by an officer and sworn to over the phone to the magistrate, stating: "[T]he language does not state an affidavit must be sworn in person. It only requires the affidavit be sworn." *State v. Herring,* 692 S.E.2d 490, 496 (S.C. 2009).

-10-

prohibiting a magistrate from administering an oath that is not in person, we hold that the oath supporting written declarations in the affidavit may be administered without an affiant personally appearing before the magistrate issuing the search warrant.[2]

[¶23.] Bowers next claims that the affidavit is inadequate because it was "signed" electronically by the officer before being presented to the magistrate judge. As discussed above, the South Dakota statutes do not require an affiant to personally appear before the magistrate for the administration of the oath, nor is there any requirement in the statutes that the affiant sign the affidavit in the presence of the issuing magistrate. However, as in administering the solemn oath, the magistrate must be satisfied that the affiant has affixed his or her signature to the written declarations made in the affidavit before certifying to that fact on the jurat.

---

2. The oath administered by a magistrate issuing a warrant "must be in a form designed to impress [the duty to testify truthfully] on the witness's conscience." SDCL 19-19-603. "The function of an oath is to bind the conscience of the speaker at a time when what he says will deeply affect the rights of an individual and to permit prosecution if perjured testimony is given." *Brummer v. Stokebrand*, 1999 S.D. 137, ¶ 17, 601 N.W.2d 619, 623 (citation omitted). The requirement to administer an oath, or receive facts that have already been sworn to under oath, is not an inconsequential step in the search warrant process. It is fundamental to ensure that the issuing magistrate receives truthful and accurate information in considering whether probable cause exists to issue a search warrant. The issuing magistrate must be satisfied that the law enforcement officer, or other person placed under oath, understands the solemnity of the oath and that all testimony or written declarations are truthful. When the oath is not administered face to face, this obligation is only heightened and the magistrate retains the discretion to require the officer to be placed under oath in person.

[¶24.]    We also reject the claim by Bowers that an electronic signature invalidates the affidavit. SDCL 23A-35-4.2 authorizes the electronic transmission of an affidavit in support of a search warrant to a magistrate. In turn, the magistrate may return an electronic copy of the search warrant to law enforcement. The rule provides that "the electronic document shall have the same force and effect as the original," SDCL 23A-35-4.2, but the rule does not specifically address the use of an electronic signature on the document. However, the Legislature has approved the use of electronic transactions and signatures in SDCL chapter 53-12, which broadly includes "actions occurring between two or more persons relating to the conduct of business, commercial, or *governmental affairs*." SDCL 53-12-1(16) (emphasis added); *see also* SDCL 53-12-2 ("[T]his chapter applies to electronic records and electronic signatures relating to a transaction."). SDCL 53-12-16 provides that "[i]f a law requires a signature, an electronic signature satisfies the law." Further, SDCL 53-12-24 provides that a signature or record that is required to be "notarized, acknowledged, verified, or made under oath" is satisfied by the electronic signature of the person authorized to perform such acts.

[¶25.]    Finally, Bowers argues the affidavit is invalid because the oath was not recorded, transcribed, and certified by the issuing magistrate as required by SDCL 23A-35-5. Because the search warrant was based upon the written declarations by Officer Coppersmith rather than oral testimony, the requirements for recording a "telephonic warrant" under SDCL 23A-35-5 are inapplicable here. Bowers cites cases where this Court has determined affidavits lacking the signature of the declarant or of the officer administering the oath are invalid in other

contexts. *See Eagleman v. Diocese of Rapid City*, 2015 S.D. 22, ¶ 30 n.3, 862 N.W.2d 839, 851 n.3 (holding that an unsigned and unsworn affidavit is a nullity for summary judgment purposes); *City of Sioux Falls v. Johnson*, 2003 S.D. 115, ¶ 13, 670 N.W.2d 360, 364 (failing to file a notarized affidavit violates SDCL 15-6-54(d), which requires a verified affidavit supporting an application for costs

[¶26.]      Bowers's objections ultimately go to the question whether there is adequate proof that Officer Coppersmith's declarations were supported by oath. Stated another way, the question becomes whether the four corners of the affidavit provide an adequate record of the officer's declarations and the administration of an oath. The purpose of the jurat is to provide proof that an oath was administered:

> A jurat containing the words "deemed duly sworn" is simply evidence of the fact that an oath was, in fact, properly administered. A jurat is not part of the oath or conclusive evidence of its due administration, and it may be attacked and shown to be false. The jurat must be executed with absolute honesty.

67 C.J.S. *Oaths and Affirmations* § 7, Westlaw (database updated June 2018) (footnotes omitted).

[¶27.]      The affidavit contains Officer Coppersmith's written declarations that were "duly sworn upon oath" and his electronic signature on the date of the arrest (July 27, 2016). The jurat signed by the magistrate judge certifies that Officer Coppersmith signed the affidavit and that an oath was administered on July 27, 2016. The four corners of the affidavit contain a complete record of the written declarations of Officer Coppersmith as well as his signature and oath. Bowers has failed to show that the affidavit relied upon by the magistrate judge violated the Warrants Clause.

[¶28.] Because the search warrant was properly issued, we do not reach the State's alternate contention that the search pursuant to the warrant was valid under the good-faith exception to the warrant requirement. We affirm the circuit court's decision denying the motion to suppress evidence.

[¶29.] GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and SEVERSON, Retired Justice, concur.